UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 11, 2006[*]
Decided September 19, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 05-3308

| | |
|---|---|
| RICHARD L. AMBROSE,<br>    *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Illinois |
| *v.* | |
| NANCY PUCKETT, et al.,<br>    *Defendants-Appellees.* | No. 002-CV-1052-JPG<br><br>J. Phil Gilbert,<br>*Judge.* |

**ORDER**

Richard Ambrose, who has been civilly committed to the Illinois Department of Corrections, sued Wexford Health Sources, the contractor for medical services for the prison, and various medical professionals under 42 U.S.C. § 1983 claiming that they, while acting under color of state law, were deliberately indifferent to his complaints of persistent abdominal pain and vomiting that followed an appendectomy. Specifically, Ambrose sued Wexford's chief medical officer, Dr.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

Rowe; Dr. Hamby, a physician employed by Wexford to provide medical services at the prison; and various nurses, also employed by Wexford to provide medical care at the prison. He also sued Dr. Rowe and Wexford under an Illinois statute that requires correctional facilities to "provide every committed person . . . with medical care." 730 ILCS 5/3-7-2(d). Ambrose claims that Dr. Rowe and Wexford violated this statute by refusing to authorize further treatment for his hernia and abdominal problems that had been requested by other prison doctors. The district court granted summary judgment for the defendants on both claims. Ambrose was represented by counsel in the district court, although he is now appearing *pro se*.

## I. Background

Ambrose has been committed as a sexually dangerous person, *see* 725 ILCS 205/0.01 *et seq*, and is confined at the Big Muddy River Correctional Center in Jefferson County, Illinois. Ambrose underwent an appendectomy procedure in November 2001. After the surgery he began experiencing frequent episodes of vomiting and lower abdominal pain. It is undisputed that in March 2002, the Wexford physician then serving as medical director at Big Muddy, Dr. Garcia, concluded that Ambrose had developed a post-operative, incisional ventral hernia, (a hernia caused by surgery), as a complication of his appendectomy. Ambrose testified, and his medical records partially corroborate, that he continued to complain to various prison officials about pain and vomiting at least until the summer of 2003. The record demonstrates that Dr. Hamby, Dr. Rowe, and Wexford never diagnosed the source or cause of Ambrose's abdominal distress in spite of the fact that other on-site doctors asked Wexford for permission to refer Ambrose for further diagnostic tests and evaluation by a surgeon. Ambrose also testified under oath that the defendant nurses repeatedly refused to refer him to a doctor when he presented his complaints at the infirmary.

Following discovery, the defendants moved for summary judgment on both the § 1983 and state-law claims. The defendants argued that Ambrose had failed to present evidence establishing when and how often he made complaints to specific nurses. They also argued that he failed to provide evidence that Dr. Hamby, Dr. Rowe, and Wexford were aware that his hernia as well as his other complaints required any additional medical care beyond what he was receiving. With respect to Ambrose's state-law claim that Dr. Rowe and Wexford denied him treatment requested by other doctors, the defendants argued that Ambrose essentially was making a negligence claim and also that they were entitled to summary judgment on this claim because Ambrose had failed to provide evidence of the standard of care that was required.

The district court granted summary judgment for all defendants on all claims. Judge Gilbert concluded that Ambrose failed to present evidence sufficient

to demonstrate that any particular nurse was aware of and deliberately indifferent to his medical needs. The court granted summary judgment to Dr. Hamby because it found no evidence that Dr. Hamby's treatment of Ambrose's condition "was a substantial departure from accepted professional judgment, practice or standards such that it could not have been based on his medical judgment. . . ." The court also decided that Dr. Rowe's and Wexford's decision to deny Dr. Garcia's request for a surgical consult on Ambrose's hernia was nothing more than a difference in opinion among medical professionals about the appropriate treatment and thus could not establish deliberate indifference. Finally, with respect to Ambrose's state-law claim against Dr. Rowe and Wexford, the court found that Ambrose did not establish that the applicable standard of care required Dr. Rowe and Wexford to approve the measures recommended by other doctors.

## II. Discussion

We review the district court's grant of summary judgment de novo. *Norfleet v. Webster*, 439 F.3d 392, 395 (7th Cir. 2006). Summary judgment is appropriate when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). Since Ambrose is not serving a criminal sentence but rather is civilly committed, his deliberate-indifference claim arises under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment. *See Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2000) ("pretrial detainee must be afforded certain protections under the Fourteenth Amendment, including access to medical care").

On the subject of the deliberate-indifference standard to be applied in cases involving the Fourteenth Amendment, we have concluded:

> Although the Eighth Amendment does not apply to pretrial detainees, pretrial detainees are entitled to *at least* as much protection as the constitution provides convicted prisoners. The Eighth Amendment protects an inmate from a governmental actor's deliberate indifference to his basic needs. Under this standard, conduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so. In *Armstrong*, we noted that [u]nder other constitutional provisions [such as the Fourteenth Amendment] . . . the standard for deliberate indifference appears closer to tort recklessness. In recognition of this, we have articulated the test for deliberate indifference for Fourteenth Amendment purposes to be a conscious disregard of known or obvious dangers.

However, considering the difficulty of peering into minds of [government officials or institutions], this distinction is of little significance in practical application. Thus, we have found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) without differentiation. In either case, the plaintiff has the burden of showing that: (1) the harm to the plaintiff was objectively serious; and (2) the official was deliberately indifferent to her health or safety.

*Board v. Farnham*, 394 F.3d 469, 477-78 (7th Cir. 2005) (internal citations and quotation marks omitted) (emphasis and alterations in original).

Initially Ambrose claims that the defendant nurses ignored his repeated complaints of pain and vomiting, and in many instances refused to pass his complaints along to doctors or to record his complaints in his medical records. If Ambrose had enough evidence for a jury to conclude that the nurses did ignore his complaints, he might have survived summary judgment. The problem for Ambrose is evidentiary; he failed to present the depositions of any of the nurses in his response to the defendants' summary judgment motion; furthermore he failed to provide specifics in his own deposition about whom he saw and when. Ambrose responds to the nurses' argument that he lacked specific evidence regarding their knowledge of his medical condition by pointing to a single relevant incident in which a guard, Officer Geyman, observed Ambrose vomiting and took him to the infirmary. Officer Geyman, in deposition testimony, stated that after he took Ambrose to the infirmary he personally spoke to two of the defendant nurses, Nancy Thomas (also known as Nancy Beatty) and Tammy Yates. The nurses informed him that Ambrose had previously received medicine for vomiting and, since there was no doctor present, there was nothing else they could do. Ambrose claims that he complained a number of times over many months about vomiting and we have held that frequent vomiting is an objectively serious medical condition for which "a lay person would recognize the need for a doctor's care." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Nevertheless, Ambrose identifies Thomas and Yates as being involved only in this one isolated incident, and as such this was insufficient to put Thomas and Yates on notice that Ambrose had a serious medical need. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (isolated incidents of delay or refusals to treat not necessarily deliberate indifference); *Guitierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997) (same). During summary judgment proceedings in the district court, where Ambrose was counseled, Ambrose gave no details about specific incidents involving defendant nurses Puckett, Steve Thomas, Adams, Isaacs, Fred, Stanley, Miller, or Little. Thus, the district court's grant of summary judgment for the nurse defendants was proper.

Dr. Hamby is a different matter. He took over from Dr. Garcia as medical director at Big Muddy on August 12, 2002, and first saw Ambrose the next day. As of that date, Drs. Garcia, Korman, and Santos each had noted Ambrose's hernia as well as his complaints of abdominal distress in his medical records. Dr. Garcia attempted without success to have Ambrose seen by the surgeon who performed the appendectomy, and, just two weeks before Dr. Hamby started at Big Muddy, Dr. Korman had requested and was denied authorization to refer Ambrose to a specialist to investigate the cause of his complaints of persistent vomiting. Although Dr. Hamby may not have possessed as much information about Ambrose on his second day on the job as Dr. Garcia, he had conducted a "jacket review" of Ambrose's records later that month and was thus aware of Ambrose's hernia condition as well as his frequent complaints of abdominal pain and vomiting. Dr. Hamby did not recommend surgery for the hernia nor did he provide any treatment for Ambrose's vomiting other than observing him in the infirmary and ordering blood tests that failed to reveal the cause of Ambrose's problem. According to Ambrose, he remained under Dr. Hamby's care and continued to complain of frequent vomiting, but Dr. Hamby refused to do anything more. When deposed in April 2004, Dr. Hamby admitted that he had not found an answer to Ambrose's problems and also had failed to perform any more investigation or testing.

Dr. Hamby testified that he did not do more for Ambrose because prisoners fake illnesses all the time, and he did not believe Ambrose's subjective complaints of pain. Prisoners are not required to present objective proof of their complaints, *Greeno*, 414 F.3d at 655, but Ambrose did; Officer Geyman testified that he personally took Ambrose to the infirmary after witnessing one vomiting incident. Whether Dr. Hamby truly believed Ambrose was malingering or just did not want to believe that Ambrose's complaints were serious is a material question of fact. *See id.* (possibility that defendants believed plaintiff was malingering is a question for the jury); *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (same). Thus, we are of the opinion that the granting of summary judgment in favor of Dr. Hamby was inappropriate.

It is evident that, Dr. Rowe was aware of Ambrose's hernia since he reported to the request of Dr. Garcia that the hernia be examined by the surgeon who performed the appendectomy on Ambrose. (R. 34, Ex. D, at 11.) As this court has held on previous occasions, a hernia can be an objectively serious medical problem. *Johnson v. Doughty*, 433 F.3d 1001, 1014 (7th Cir. 2006); *see Heard v. Sheahan*, 253 F.3d 316, 317-18 (7th Cir. 2001) (suggesting that plaintiff could show deliberate indifference if doctors ignored his complaints of a painful hernia); *Chapman v. Keltner*, 241 F.3d 842, 845-46 (7th Cir. 2001) (suggesting that plaintiff could show deliberate indifference if officials caused her post-surgery hernia by knowingly forcing her to climb steps against doctor's orders); *see also* COURTNEY M. TOWNSEND ET AL., SABISTON TEXTBOOK OF SURGERY 1199 (17th ed. 2004) ("More than 600,000

hernias are repaired annually in the United States, making hernia repair one of the most common operations performed by general surgeons.").

Thus, the only question is whether Rowe was deliberately indifferent to Ambrose's hernia as well as his frequent complaints of pain and vomiting. Although Dr. Garcia did not note Ambrose's complaints of abdominal pain and vomiting on the brief authorization form he sent to Dr. Rowe, surely Dr. Rowe, as Wexford's chief medical officer, knew that hernias can cause severe medical problems, and this is an example of it.[1] Even if the failure of the authorization form (March 11, 2002) to mention Ambrose's complaints of frequent vomiting suggested to Dr. Rowe that Ambrose's hernia was not currently serious, Dr. Rowe, with his medical training, knowledge, and experience, should have known that hernias can and often do become progressively worse and that he should have inquired further. *See Board*, 394 F.3d at 479 (7th Cir. 2005) (explaining that the Eighth Amendment protects an individual "not only from deliberate indifference to his or her *current* serious health problems, but also from deliberate indifference to conditions posing an unreasonable risk of serious damage to *future* health.").

What's more, Ambrose has testified that he had complained frequently to prison medical staff about his abdominal problems, and at the summary judgment stage we must accept these allegations as true. *See Norfleet*, 439 F.3d at 395. We note that Dr. Rowe failed to make a serious attempt to submit evidence on his behalf on this point. He has neither been deposed nor has he presented any documentation or affidavit in explanation of why he decided that Ambrose's hernia was not serious enough to require further evaluation or whether he knew of Ambrose's symptoms. Prison officials cannot escape § 1983 liability by consciously avoiding knowledge of a substantial risk to a prisoner's health. *Farmer v. Brennan*, 511 U.S. 825, 843 n.8 (1994); *Mayoral v. Sheahan*, 245 F.3d 934, 940 (7th Cir. 2001); *Higgins v. Corr. Med. Serv. of Ill.*, 178 F.3d 508, 511 (7th Cir. 1999). A reasonable jury might very well infer that this is what Dr. Rowe was in effect doing by denying Dr. Garcia's request without further investigation. *See Mayoral*, 245 F.3d at 940 (concluding that jury could find that correctional officer was "deliberately ignorant" when she claimed to be unaware of gang activity in jail even though evidence showed gang activity was "pervasive"). This is particularly true in light of an

---

[1]In addition, despite the fact that Dr. Garcia was the on-site medical director at Big Muddy, it is not clear that Dr. Rowe ever did inquire further about Dr. Garcia's reasons for making the request for a surgical consult before deciding to deny it. Wexford and Dr. Rowe entrusted Dr. Garcia with front-line responsibility for the health care of inmates at Big Muddy, and it is certainly reasonable to infer that Dr. Rowe would have confidence in Dr. Garcia's exercise of medical judgment and would not cavalierly reject Dr. Garcia's recommendation for a surgical consult without fully investigating and understanding the basis for his recommendation.

attitude that seems to exist at the prison, as evidenced by Dr. Hamby's comments, that prisoner medical complaints need not be taken seriously because all prisoners fake illness. Therefore, summary judgment was also improper as to Dr. Rowe.

That brings us to Wexford, the final defendant in Ambrose's claim under § 1983. In responding to the defendants' motion for summary judgment, Ambrose failed to refer to Wexford except when discussing his claims under state law, so it is not clear that he intended to pursue a deliberate-indifference claim against the corporation. In any case, a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation. *Woodward v. Corr. Medical Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Ambrose, however, has failed to allege, nor has he introduced any evidence which would suggest, that Wexford had such a policy or practice. He has alleged only that Wexford denied specific requests for treatment. Because Ambrose has failed to allege that Wexford had a policy or practice that led to the denial of medical care which he needed, the grant of summary judgment to Wexford was proper.

The district court also granted summary judgment to Dr. Rowe and Wexford on Ambrose's claim that they violated an Illinois statute by refusing to provide treatment recommended by other doctors. Ambrose grounds this claim on 730 ILCS 5/3-7-2(d), which says that all correctional facilities "shall provide every committed person . . . with medical care." Ambrose has not adequately challenged the dismissal of this claim on appeal. Nor has he cited any authority that specifically explains what this statute requires, and we have not found any. We have said many times that undeveloped arguments are waived on appeal. *See, e.g., Weinstein v. Schwartz*, 422 F.3d 476, 476 n.1 (7th Cir. 2005).

We VACATE the grant of summary judgment as to Dr. Hamby and Dr. Rowe and REMAND the case for further proceedings consistent with this order. In all other respects, the judgment of the district court is AFFIRMED.