In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1237

ARMOND NORFLEET,

*Plaintiff-Appellee,*

*v.*

THOMAS WEBSTER and ALEJANDRO HADDED,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 03 C 458—**David F. Hamilton**, *Judge.*

ARGUED NOVEMBER 28, 2005—DECIDED MARCH 3, 2006

Before KANNE, ROVNER, and WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* Armond Norfleet suffers from arthritis. While incarcerated in a federal prison at Milan, Michigan ("Milan"), Norfleet was given certain medical treatments for his arthritis, including Naprosyn and soft-soled shoes for his aching feet. On May 22, 2002, he was transferred to the federal prison at Terre Haute, Indiana ("Terre Haute"), where the medical authorities were not as sympathetic to his joint problems. A doctor at Terre Haute concluded the soft-soled shoes and other treatments were unnecessary, and pursuant to prison policy the drugs Norfleet had been taking for his pain were curtailed. Norfleet sued, naming five prison officials, claiming that they had been deliberately indifferent to his serious medical needs in violation of the Eighth Amend-

ment. The district court granted summary judgment to three of the defendants, but denied it as to Dr. Thomas Webster, Clinical Director at Terre Haute in charge of the medical care and treatment of all inmates, and physician assistant Alejandro Hadded, whose duties included scheduling appointments for inmates to receive their prescribed drugs. Before us is the government's appeal of that denial. Seeing things differently than the district court, and agreeing with the government, we reverse.

## I.  HISTORY

Norfleet's history of treatment for arthritis is relevant to the disposition of this case, so we will recite it in necessary detail. In 1994 Norfleet was given a medical prescription for soft-soled shoes, which provide more padding and support than the standard prison-issued shoes. In that year Norfleet also had his work classification status changed so that he would not be required to wear steel-toed shoes, which because of their weight would aggravate any pain and long-term effects associated with serious arthritis.

Medical records from 1998 indicate that Norfleet not only had arthritic pain, but was also positive for rheumatoid factor, an antibody in the blood that is an indication of rheumatoid arthritis, which can be a severe and debilitating form of arthritis. Norfleet was again examined for arthritis while housed at Milan in 1999. X-rays were taken of his hands, feet, and ankles, all of which were suspicious for rheumatoid arthritis.[1] Further x-rays still raised "suspicions," but this time the diagnosis was merely minimal rheumatoid arthritis.

---

[1] The government has informed us, without opposition from Norfleet, that "'suspicious for' is a medical 'hedge' term that indicates a degree of uncertainty about the diagnosis."

By 2001 Norfleet appeared to be getting better. New x-rays showed improvement, and a rheumatoid factor lab test taken on July 23, 2001, was negative for rheumatoid arthritis. On October 13, 2001, a physician at Milan determined that Norfleet's "disease [was] not serious enough to warrant soft shoes."

Less positive evaluations followed less than four months later, on February 6, 2002, when Norfleet was examined by Dr. Eugene Y. Su, a doctor outside of the prison. Dr. Su determined that the results of an examination were consistent with rheumatoid arthritis. The treatment plan developed by Dr. Su included a suggested increase of Naprosyn (a nonsteroidal, anti-inflammatory drug), and the doctor's opinion that Norfleet "would benefit from better shoes with more padding/support." On March 2, 2002, the authorities at Milan allowed Norfleet to have soft-soled shoes for a period of six months.

About three months later, on May 22, 2002, Norfleet was transferred to Terre Haute. Shortly after his arrival, prison authorities confiscated Norfleet's soft-soled shoes because he did not have authorization from Terre Haute to wear them. At about the same time, though the record is not entirely clear on the sequence, Dr. Webster reviewed Norfleet's medical files. On July 18, 2002, Dr. Webster noted in a medical record that Norfleet had a "past [history] of rheumatoid arthritis," "minor deformities in toes," and "minor RA [rheumatoid arthritis] changes in toes." Physician assistants at Terre Haute made similar entries in Norfleet's medical records, some of which can be read as a more definitive and serious diagnosis of Norfleet's condition, e.g., that Norfleet "*suffers* from rheumatoid arthritis." (emphasis added). Dr. Webster's ultimate determination, however, was that Norfleet had minimal arthritis, not rheumatoid arthritis. Accordingly, Dr. Webster concluded that Norfleet did not require soft-soled shoes, which resulted in Norfleet being forced to wear the less

comfortable prison-issued shoes. Dr. Webster also curtailed or discontinued other medications.[2]

During this time, Norfleet continued to receive Naprosyn for his pain. In fact, on December 30, 2003, a pharmacist stated in medical records that Norfleet was "authorized by Dr. Webster to receive Naprosyn." On February 12, 2003, a number of months after the confiscation of his soft-soled shoes, Norfleet reported to Health Services at Terre Haute to obtain a refill of his prescribed Naprosyn. Hadded, a low-level employee who was manning the desk at Health Services, refused to just fill Norfleet's prescription. Instead, following the prison's written medical policy, Hadded scheduled an appointment for Norfleet thirteen days out, which resulted in Norfleet going twelve days without his pain medication. It is undisputed that as of January 17, 2003, Terre Haute had implemented a new policy to deal with the abuse and possible side effects of unbroken use of certain prescription drugs, including the Naprosyn taken by Norfleet. The policy required that an inmate requesting a refill of Naprosyn had to wait at least ten days for a refill, but not more than fourteen.

---

[2] Norfleet emphasizes a number of facts not relied upon by the district court. He makes note of the fact that in addition to having his soft-soled shoes revoked, his Plaquenil prescription and associated eye exams, and treatment at the Chronic Care Clinic were discontinued. It is not clear how or why Norfleet began treatment at the Chronic Care Clinic, but the record is clear that Dr. Su's treatment plan included a prescription for Plaquenil, a drug used to treat arthritis. The eye exams presumably were necessary to monitor the side effects of Plaquenil, which include vision problems. We have considered these facts, as well as all other properly supported facts asserted by Norfleet in his brief, but they do not change our determination that the record cannot support a claim of deliberate indifference on the part of either defendant.

## II. ANALYSIS

As the district court's ruling was on a motion for summary judgment, our review is de novo, and we construe all disputed facts in the light most favorable to Norfleet. *See Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (citations omitted). On an appeal from the government contesting the denial of qualified immunity, we will not second-guess the district court's determination regarding a dispute of fact, though we will review the district court's determination that a set of facts can overcome a qualified immunity defense. *Board v. Farnham*, 394 F.3d 469, 476 (7th Cir. 2005) (citation omitted). The threshold question concerning a qualified immunity defense is whether there is any merit to the underlying constitutional claim. *Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

To sustain his claim of deliberate indifference in violation of the Eighth Amendment, Norfleet must show "that he had a serious medical need and that a defendant was deliberately indifferent to it." *Garvin*, 236 F.3d at 898 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). There is no dispute that Norfleet's condition qualifies as a "serious medical need," thus the focus of this case is on deliberate indifference. The inquiry into deliberate indifference is a subjective one that asks whether "the prison official acted with a sufficiently culpable state of mind." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citation omitted).

A prison official has a sufficiently culpable state of mind when the official "knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Id.* (citation omitted). Negligence does not meet this standard; therefore, even admitted medical malpractice does not give rise to a constitutional violation. *Id.* ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." (quoting *Estelle*,

429 U.S. at 106)). Accordingly, we have held that a difference of opinion among physicians on how an inmate should be treated cannot support a finding of deliberate indifference. *Garvin*, 236 F.3d at 898 (citing *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254 (7th Cir. 1996)). To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *See Estate of Cole*, 94 F.3d at 262 (citation omitted). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Walker*, 293 F.3d at 1037 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

We need not consider qualified immunity past the determination of whether the facts taken in the light most favorable to Norfleet show a constitutional violation. *See Riccardo*, 375 F.3d at 526 (citation omitted). On the basis of this record, no reasonable juror could find that either Dr. Webster or Hadded were deliberately indifferent to Norfleet's serious medical need. As for Dr. Webster, the facts show nothing more than a difference of opinion as to the seriousness of Norfleet's arthritis, which at the very most amounts to medical malpractice. It is undisputed that Dr. Webster reviewed Norfleet's medical history in making the determination that Norfleet did not need soft-soled shoes. And one need only take a look at that history to determine that Dr. Webster's treatment decision was not "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate" a complete abandonment of medical judgment. *Estate of Cole*, 94 F.3d at 262 (quotations and citation omitted).

The medical records before Dr. Webster were that in 1994 Norfleet was prescribed soft-soled shoes and by 1998 his lab tests and x-rays indicated rheumatoid arthritis. But by October 2001 reviewing medical personnel had determined

that Norfleet was better; his x-rays showed improvement, and lab tests came up negative. The improvement was such that a physician determined Norfleet's "disease [was] not serious enough to warrant soft shoes." Things seemed to take a turn for the worse less than four months later, when on February 6, 2002, Dr. Su's tests were consistent with rheumatoid arthritis, leading him to opine that Norfleet "would benefit from" soft-soled shoes. Thus, Dr. Webster was presented with two differing medical opinions made within seven months prior to his review and within four months of each other. Furthermore, it must be noted that these differing opinions, as well as Dr. Webster's ultimate determination, differed only in *degree*. Dr. Webster recognized that Norfleet suffered from minimal arthritis pain and accordingly prescribed medication. But after reviewing the various opinions, Dr. Webster decided that the record did not support an unequivocal diagnosis of rheumatoid arthritis and therefore refused to prescribe soft-soled shoes, and curtailed other treatments. This opinion, undisputably based on medical records, some of which support the challenged determination, cannot support an inference of deliberate indifference. *See Estate of Cole*, 94 F.3d at 262.

Nor can the record support a violation of the Eighth Amendment as to Hadded, a low-level prison employee. Remember, deliberate indifference indicates a culpable state of mind, something akin to criminal recklessness, which requires that the defendant be aware of and disregard an excessive risk of serious harm to the inmate. *Farmer*, 511 U.S. at 836-37. All Hadded did in this case was follow the prison's policy of requiring prisoners to wait at least ten days before getting a refill of the pain reliever Naprosyn, a policy that on its face was implemented to protect inmates from harmful side effects. There is no indication that he acted on any basis other than that policy. *Cf. Walker*, 293 F.3d at 1039-40 (denying qualified immunity where facts indicated that a nurse consis-

tently refused to provide prescribed pain medication because of her own belief that the inmate did not need it). Hadded's adherence to the prison policy regarding pain relievers cannot support an inference of deliberate indifference.[3]

## III.  CONCLUSION

For the foregoing reasons, we REVERSE the ruling of the district court and REMAND with instructions that judgment be entered on behalf of Dr. Webster and Hadded.

---

[3]  We note that Norfleet has not contended that the policy itself is unconstitutional or otherwise unlawful.

No. 05-1237 9

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
