NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted November 13, 2008[*]
Decided November 17, 2008

**Before**

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 07-4064

| | |
|---|---|
| CURTIS ZACKERY, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Western Division. |
| *v.* | |
| | No. 04 C 50362 |
| ANTREAS MESROBIAN, | |
| *Defendant-Appellee.* | |
| | Frederick J. Kapala, *Judge.* |

**O R D E R**

Curtis Zackery, an inmate at Dixon Correctional Center in Illinois, injured his knee and suffered knee pain for the next four years. During that period, Dr. Antreas Mesrobian, Dixon's medical director, prescribed various treatments, but when each proved unsuccessful he referred Zackery to doctors at the University of Illinois, who diagnosed him with torn menisci and operated on both of his knees. Zackery then sued Dr. Mesrobian

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

under 42 U.S.C. § 1983 claiming that his failure to properly diagnose and treat the knee injury amounted to deliberate indifference to a serious medical need, a violation of the Eighth Amendment. The district court granted summary judgment for Dr. Mesrobian, and we affirm.

In June 2000, 46-year-old Zackery went up for a rebound during a basketball game and fell hard, injuring his left knee. He immediately saw a nurse, who gave him Tylenol and put him on the list to see a doctor; that doctor examined Zackery four days later but concluded that there was nothing wrong with his knee. Zackery voiced no further complaints until March 2001, nine months later, when he returned to the infirmary complaining of chronic knee pain and was referred to Dr. Tulyasathien, an outside orthopedic specialist. Dr. Tulyasathien examined Zackery on March 28 and, suspecting that he might have internal derangement of his left knee and a torn medial meniscus, recommended to Dr. Mesrobian, who must approve all medical procedures for inmates, that Zackery receive an MRI or arthroscopic examination. Dr. Mesrobian examined Zackery himself in May 2001 and several more times over the next few months, eventually diagnosing Zackery with osteoarthritis and prescribing medication for that illness. Because he believed that Zackery's symptoms were not significant, he did not order the diagnostic tests that Dr. Tulyasathien had recommended.

Over the next year, Zackery visited the infirmary several times for other ailments, but made no more complaints about knee pain until April 2002 when he reported pain in both knees. Zackery concluded that his right knee now hurt too because it was overcompensating for his weakened left knee. Medical staff prescribed anti-inflammatory medication and ordered x-rays, which, according to the radiologist, showed osteoarthritis. Although these results were consistent with Dr. Mesrobian's diagnosis, he nevertheless arranged for Dr. Tulyasathien, the orthopedic specialist, to re-examine Zackery in June 2002. Once again, the specialist suspected an internal derangement and a possible torn medial meniscus in Zackery's left knee and recommended an MRI or arthroscopic examination. Dr. Tulyasathien also suspected that Zackery had a strain in his right knee.

Later that month Dr. Mesrobian examined Zackery again and, still convinced that he was suffering from osteoarthritis, prescribed weekly physical therapy, which Zackery received for three months until the therapist discharged him. Zackery continued to complain of knee pain and saw Dr. Mesrobian and other Dixon medical staff several times over the next year. The doctors ruled out internal derangement and meniscal tears—although the record does not shed light on how they did so—and treated Zackery with medication and bedrest. But Zackery showed no improvement, and Dr. Mesrobian arranged yet another visit with Dr. Tulyasathien in June 2003. This time, Dr. Tulyasathien diagnosed osteoarthritis of both knees and recommended strengthening exercises.

Zackery's knees continued to hurt so Dr. Mesrobian admitted him to the infirmary for 19 days on a regimen of complete rest and anti-inflammatory medication. When that did nothing, Dr. Mesrobian sent Zackery back to Dr. Tulyasathien, who reiterated his osteoarthritis diagnosis. Finally, Dr. Mesrobian referred Zackery to the University of Illinois where doctors performed an MRI and diagnosed what Dr. Tulyasathien had originally suspected, a torn meniscus in Zackery's left knee, as well as a torn meniscus in his right knee. They operated on Zackery in March and May 2004, nearly four years after he sustained his original injury.

Zackery filed his complaint pro se, and the district court appointed counsel. In granting summary judgment, the district court assumed that Zackery had a serious medical need but concluded that his evidence would at most establish negligence. We review de novo the grant of summary judgment, and because Zackery is the non-moving party, we construe the facts and draw all inferences in his favor. *See Duckworth v. Ahmad*, 532 F.3d 675, 678 (7th Cir. 2008). Summary judgment is proper if the evidence shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). To survive summary judgment, Zackery was required to demonstrate that a reasonable fact-finder could conclude that he suffered from an objectively serious medical condition that Dr. Mesrobian knew or should have known about but ignored. *See Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Davis v. Carter*, 452 F.3d 686, 695-96 (7th Cir. 2006). Like the district court, we need not address whether Zackery's condition was objectively serious because we conclude that he did not raise a question of fact as to whether Dr. Mesrobian was deliberately indifferent.

Zackery argues that Dr. Mesrobian's misdiagnosis and rejection of Dr. Tulyasathien's initial recommendations for diagnostic testing constituted deliberate indifference. But dissatisfaction with a doctor's chosen course of treatment—even when that course was negligent—is insufficient to establish deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). And Zackery presented no evidence that Dr. Mesrobian's diagnosis and chosen course of treatment were so far afield of accepted professional standards as to raise an inference of deliberate indifference. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *Estate of Cole v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). Dr. Mesrobian was confident based on repeated examinations of Zackery's knee that he suffered from osteoarthritis, and a radiologist reviewing Zackery's x-rays confirmed this diagnosis. Although Dr. Mesrobian's diagnosis turned out to be wrong, and Dr. Tulyasathien's initial suspicion proved correct, a difference of opinion among physicians is insufficient to establish deliberate indifference. *See Norfleet*, 439 F.3d at 396. Further, Dr. Tulyasathien changed his opinion to osteoarthritis in 2003, confirming that Dr. Mesrobian's opinion was supported by sound medical judgment. *See*

*Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (noting that medical professionals' treatment decisions are entitled to deference unless "'no minimally competent professional would have so responded under those circumstances'").

Although Zackery correctly points out that a defendant's decision to ignore a specialist's orders can raise an inference of deliberate indifference, *see Gil v. Reed*, 381 F.3d 649, 662-64 (7th Cir. 2004), he presented no evidence to raise such an inference here. *Compare id.* at 664 (concluding that reasonable fact-finder could infer deliberate indifference where prison doctor canceled specialist's prescriptions and substituted medication which specialist had specifically warned was dangerous for persons with plaintiff's condition); *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (concluding that plaintiff's evidence that prison doctor waited six months before making promised referral to neurologist and then, once he did, refused without explanation to follow neurologist's orders, was sufficient to survive summary judgment). In his affidavit, Dr. Mesrobian explained that his decision to forego the recommended diagnostic testing in May 2001 was based on his conclusion, in light of physical examinations and range-of-motion tests, that Zackery's symptoms were not significant enough to warrant further testing. And, he explained, he decided not to order testing in June 2002 after x-rays confirmed his suspicion that Zackery was suffering from osteoarthritis. Zackery, on the other hand, has submitted no evidence that would allow a reasonable fact-finder to infer that Dr. Mesrobian's decisions were based on anything other than medical judgment.

From 2001 to 2004, Dr. Mesrobian examined Zackery approximately twenty times; referred him to specialists; ordered x-rays; tried multiple treatments including medication, physical therapy, and bedrest; and eventually sent him to see experts at the University of Illinois. *Compare Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (holding that defendant's "obdurate refusal" to alter course of treatment despite obvious ineffectiveness raised inference of deliberate indifference). In light of the totality of care Dr. Mesrobian provided, a reasonable fact-finder could not construe his actions as deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000). Although it may have been prudent for Dr. Mesrobian to order diagnostic testing in 2001, his failure to choose the best course of action does not amount to a constitutional violation. *See Estelle*, 429 U.S. at 107; *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002).

AFFIRMED.