NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 31, 2010[*]
Decided April 6, 2010

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 09-3523

| | |
|---|---|
| CORNELIUS R. MADDOX, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of |
| | Wisconsin. |
| *v.* | |
| | No. 08-C-521 |
| DONALD JONES, et al. | |
| *Defendants-Appellees,* | William C. Griesbach, |
| | *Judge.* |

**O R D E R**

Unexpected complications during a dental procedure left Wisconsin inmate Cornelius Maddox in significant pain. He filed suit under 42 U.S.C. § 1983 against six current or former employees of the Wisconsin Department of Corrections, claiming that delays in treatment and pain management caused him needless suffering in violation of the

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(c).

Eighth Amendment. The district court granted summary judgment in favor of the defendants. We affirm.

The relevant facts, which we construe in a light favorable to Maddox, begin with what was supposed to be a routine tooth extraction. Dr. Donald Jones, the prison's resident dentist, attempted to remove one of Maddox's wisdom teeth but stopped short when he caught sight of the nerve roots, which he said were splayed across the tooth like a "grappling hook." Extraction, he determined, could damage the jaw, so Dr. Jones cancelled the procedure and referred Maddox to an oral surgeon. For pain or swelling in the meantime, he prescribed Ibuprofen.

The parties dispute the condition in which Dr. Jones left the site of the failed extraction. There is agreement that he cut open the gum tissue and loosened the tooth, but where Dr. Jones insists he did not use a drill during the procedure, Maddox says he heard a drilling device and that he left with a large hole in his tooth, his gum tissue still exposed. Maddox claims that the area around his tooth grew infected within four days of the procedure. He provides details in an affidavit, describing extreme pain, swelling, and pus. His affidavit also describes a foul odor emanating from his mouth, further evidence in his mind that the site was infected. Several inmates who observed Maddox during this period submitted affidavits describing similar symptoms.

On July 17, 2006, four days after the procedure, Maddox filed a Dental Service Request (DSR) complaining that his mouth was infected and requesting emergency treatment. Dr. Jones was off work from July 17 to July 24, and it was the prison's policy at the time that only dentists could review DSRs.[1] As a result, though it was received and time stamped the following day, the DSR was not prioritized, and Maddox did not receive a formal response from the dental unit until Dr. Jones returned on July 24, at which time an appointment was scheduled for the next day.

Meanwhile, Maddox complained about his condition to Sgt. Laufenberg, a member of the prison's security staff. He says he saw Sgt. Laufenberg use the phone to relay his complaints to the dental department and the health services unit. Based on these calls, Maddox contends that his condition and request for immediate medical attention were known by three members of the medical staff—Brooke Bodart, a dental hygienist at the

---

[1] A policy vesting dentists with sole authority to review dental service requests would seem to invite disaster where, as here, an extended period of time passes with no dentist on site. Although the prison avoided a constitutional violation on this record, the consequences could have been far more serious.

prison; Stephanie Sequin, a former nurse at the prison, now deceased; and Richard Heidorn, a physician at the prison.

When Dr. Jones next saw Maddox on July 25, he acknowledged that the surgery site had been healing slowly, but concluded it was not infected. To advance the healing, he prescribed penicillin, which by Maddox's own account was successful, though Maddox claims he remained in pain until after his eventual oral surgery on August 11, when he was prescribed stronger pain medication.

Maddox's Eighth Amendment claim survived initial screening but was ultimately defeated on summary judgment. The district court had allowed Maddox to proceed against Jones, Sequin, and Bodart on the theory that they knowingly deprived him of medical attention; and against Jeananne Zwiers, the director of the prison's Health Services Unit, and William Pollard, the warden, on the theory that they had personal knowledge that he was experiencing pain and failed to intervene. The court, however, went on to grant summary judgment in favor of all of the defendants. The court's ruling rested primarily on its conclusion that Maddox had not shown that he suffered a serious injury by the delay in dental treatment. It reasoned that if there was no infection when Dr. Jones inspected the surgical site on July 24, there likely was no infection when Maddox complained to authorities a week earlier. Without proof of an infection, the court explained, Maddox could not show that prison officials disregarded a serious risk to his health.

On appeal, Maddox first challenges the district court's conclusion that he was never in serious need of medical attention. Resting on his affidavits and those of his fellow inmates, he argues that a fact question exists over whether the pain in his mouth, coupled with a potential infection, amounted to an objectively serious medical need. His position is defensible, *see Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) (affirming summary judgment for inmate who submitted evidence that he suffered dental problems after being deprived of toothpaste for three weeks); *Hartsfield v. Colburn*, 371 F.3d 454, 457-58 (8th Cir. 2004) (reversing summary judgment in favor of jail physician and nurse where evidence showed six-week delay in dental treatment caused pain and infection); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (vacating grant of summary judgment for dentist who waited three weeks before referring inmate with infected wisdom tooth), and we are not persuaded by the district court's gratuitous comment that infections "would not establish (or even hint at) deliberate indifference [because they] occur all the time, and the United States Constitution was not drafted and ratified in order to prevent them." Countless cases says otherwise. *See E.g.*, *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009) (prisoner could state an Eighth Amendment claim against hospital officials by alleging that they failed to treat his arm, resulting in severe pain and infection); *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2008) (reversing summary judgment in favor of physician who failed to dispense antibiotics to prisoner who needed the drugs to treat an infection).

But even if we were to assume that Maddox's condition was sufficiently serious, he still must meet his burden of production on the issue of deliberate indifference. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). To demonstrate deliberate indifference, he must show that the defendants were subjectively aware of a serious risk to his health and either knowingly or recklessly disregarded it. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009).

We turn first to Maddox's claim against Dr. Jones. Maddox renews his argument that the condition in which Dr. Jones left his tooth is evidence from which a trier of fact could infer deliberate indifference. It was reckless, he contends, for Dr. Jones to send him away with an exposed tooth and no means of countering a potential infection. Worse yet, he points out, Dr. Jones left for a week knowing that his patients would not have access to dental treatment in his absence.

The record evidence is insufficient to support an inference that Dr. Jones consciously disregarded a substantial risk to Maddox's health. Although Maddox contends that his untreated tooth condition should have alerted Dr. Jones to the seriousness of the situation, an official's failure to address an apparent risk of harm does not give rise to an Eighth Amendment violation. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994); *Anderson v. Cornejo*, 355 F.3d 1021, 1027 (7th Cir. 2004). Instead, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 838. Nor does the record suggest that a risk of serious harm was apparent from the outset. Maddox admits that his tooth was not infected when he left Dr. Jones's office on July 13, and the record does not reflect that he complained of pain until four days later. By then, however, Dr. Jones had left for the week, and he did not receive Maddox's request for treatment until he returned. By Maddox's own account, Dr. Jones upon reviewing the DSR promptly scheduled an appointment and treated Maddox the following day. Maddox's argument that Dr. Jones should have prescribed antibiotics beforehand is at best a claim of malpractice, which does not violate the Eighth Amendment. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Maddox also challenges the district court's grant of summary judgment in favor of Dr. Heidorn, Nurse Sequin, and dental hygienist Bodart. He argues that all three officials were aware of a serious risk to his health and yet failed to take steps to address it. The primary evidence he offers against the three officials is his own affidavit recounting Sgt. Laufenberg's assurance that his complaints were relayed to employees in the dental and health units. But Sgt. Laufenberg's representations to Maddox about what information was relayed in his phone conversations are inadmissable hearsay and may not be relied upon to

defeat summary judgment.[2] FED. R. EVID. 802; *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003); *see also Collins v. Seeman*, 462 F.3d 757, 760 n.1 (7th Cir. 2006). Maddox tries to sidestep this evidentiary hurdle by arguing that he "observed" Sgt. Laufenberg on the phone with medical officials, but observations cannot verify the contents of a phone conversation.

Maddox argues that there is other evidence in the record that raises a fact question about whether Heidorn and Sequin harbored culpable states of mind. Regarding Nurse Sequin, Maddox refers to, somewhat ambiguously, a medical record reflecting that she refilled his Ibuprofen prescription two days after he first requested medical attention. But from this it cannot be inferred that Nurse Sequin knew the reason he needed Ibuprofen, or, more importantly, that the Ibuprofen would be inadequate. *See Collins*, 462 F.3d at 761. For much the same reason, Maddox cannot show deliberate indifference on the part of Dr. Heidorn, whose only connection to this case is a form he completed on July 17, 2006, referring Maddox to an oral surgeon. The form does not specify the purpose of the appointment and provides no details suggesting that Dr. Heidorn knew Maddox was in serious pain.

As for hygienist Bodart, Maddox argues that the district court should have inferred deliberate indifference from a time stamp on his DSR dated July 18, 2006, presumably a day she was on call. As Maddox tells it, Bodart received the DSR, stamped it, and then filed it away without notifying health services. This, he argues, was sufficient to create a question of fact about her culpability. We disagree. Maddox does not dispute that under the policy in place at the time, only a dentist could schedule DSRs and assign them priority. Bodart could stamp incoming DSRs to verify receipt, but she had no authority to review them. Absent any evidence that she reviewed the DSR (in contravention of prison policy), the limited scope of her authority negates any inference of her culpability. *See Norfleet*, 439 F.3d at 397 (low-level employee's adherence to prison policy concerning pain relievers could not support an inference of deliberate indifference); *see also Camberos v. Branstad*, 73 F.3d 174, 177 (8th Cir. 1995).

---

[2]The hearsay problem is worse than Maddox lets on to. He claims that Sgt. Laufenberg "relayed" his complaints to health officials, but the prison's complaint examiner reported, and Maddox does not dispute, that Sgt. Laufenberg was actually working through an intermediary, Officer Kennedy. Officer Kennedy was the official in contact with health services, and Maddox would need his statements, along with Sgt. Laufenberg's, in order to demonstrate which officials knew what. *See United States v. Polson*, 285 F.3d 563, 567 (7th Cir. 2002).

Maddox's claims against Zwier and Pollard fare no better. Even if he had evidence of constitutional violations on the part of the prison medical staff, Zwier and Pollard could be held liable only if they knew Maddox's condition was serious and yet disregarded it. *Steidl v. Fermon*, 494 F.3d 623, 631 (7th Cir. 2007); *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). But Zwier asserted in an affidavit that her only involvement in this matter was being copied on an internal grievance on July 27. By that point, Maddox had been treated by Dr. Jones, and Zwier's follow-up inquiries with Nurse Sequin did not reveal a need for further intervention. As for Pollard, nothing in the record suggests that he was aware of Maddox, let alone his health status.

AFFIRMED.