<div style="border:1px solid">

**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

</div>

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 19, 2020[*]
Decided May 20, 2020

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-2545

| | |
|---|---|
| DAVID A. SLAUGHTER, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 17-C-1448 |
| | |
| JEAN LUTSEY and KATHY LEMENS, | Lynn Adelman, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

David Slaughter, a Wisconsin inmate, sued a prison nurse and the health services manager, alleging that they provided inadequate medical treatment in violation of the Eighth Amendment by failing to schedule him an appointment with a prison doctor and by not conducting proper tests. The district court entered summary judgment for the defendants, concluding that no reasonable jury could find that the nurse's actions

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

fell outside the bounds of accepted professional judgment or that the supervisor ignored complaints that put her on notice of a serious risk to his health. We affirm.

We construe the facts in the light most favorable to Slaughter, the nonmoving party. *Shields v. Illinois Dep't of Corrs.*, 746 F.3d 782, 786 (7th Cir. 2014). On January 9, 2017, Slaughter went to the health services unit at Green Bay Correctional Institution complaining of a mouth infection. The dentist prescribed antibiotics, pain medicine, and a lidocaine rinse.

Two weeks later, on January 24, Slaughter wrote to the health services unit that he had lost consciousness for fifteen minutes, experienced a lot of pain, and had a fever. Kathy Lemens, a nurse, examined him. Her treatment notes reflect that Slaughter reported he had diarrhea, no appetite, a fever, and body aches. Based on these symptoms and her observations, Lemens suspected that Slaughter had a stomach virus. She followed the prison's "abdominal protocol," which provides that the inmate should take anti-diarrheal medicine, avoid spicy foods, and drink more water. She also referred Slaughter's chart to an advanced care provider (a doctor or nurse practitioner) and scheduled a follow-up appointment in three days.

Two days later, Slaughter reported to a guard that he had blood in his stool. The guard informed the health services unit of Slaughter's complaint, and a nurse responded that Slaughter should file a request for an appointment. The next day, Slaughter submitted a request, stating that his condition had deteriorated and that Lemens had failed to notify the prison doctor of his condition or schedule an appointment with the doctor. He also wrote to Jean Lutsey, the health services manager, reiterating these concerns. Lutsey responded that Lemens had consulted with the doctor, but that the doctor had not been available for an appointment.

Lemens examined Slaughter again that day. Her treatment notes reflect that Slaughter reported blood in his stool but do not mention diarrhea (Slaughter says he also told her that he had been coughing up blood). Slaughter acknowledged at the appointment that he had not taken the medicines that Lemens had previously ordered. Lemens decided to continue the abdominal protocol and instructed Slaughter to take the anti-diarrheal medicine and acetaminophen, eat as tolerated, and drink water.

Two days later, Slaughter submitted another health services request, stating that he was still in pain and "bleeding" (without further description). He also sent another letter to Lutsey, asserting that Lemens had retaliated against him for his previous complaint about her treatment by discontinuing the pain medication that the dentist had prescribed for his mouth infection. A nurse (not Lemens) examined Slaughter in response to his request and recorded that his main complaints were of mouth pain and diarrhea. This nurse also followed the abdominal protocol, referred Slaughter to the dentist, and instructed him to take acetaminophen one to two times per day for a week. She also scheduled a follow-up appointment for four days later and told Slaughter to submit another health services request if he did not see improvement. Lutsey then responded to Slaughter's letter a few days later, explaining that the dental order for pain medication for his mouth infection had originally been for only ten days, but that a new ten-day order had been entered that day.

On February 1, Slaughter complained to a guard that his whole body was in pain, that he coughed up blood, and that he felt like he was going to die. A nurse examined him and consulted a prison doctor, who, on February 3, ordered Slaughter transferred to the emergency room. Slaughter was diagnosed with meningitis ("likely viral"), treated, and sent back to the prison after a six-day hospital stay.

Slaughter sued Lutsey and Lemens under 42 U.S.C. § 1983, alleging that they had been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by not consulting with a doctor sooner and by failing to conduct more appropriate tests to accurately diagnose his ailment. The district court entered judgment in favor of the defendants. The court concluded that Slaughter did not present sufficient evidence that Lemens provided ineffective treatment, as she had properly noted his symptoms, prescribed a course of treatment to remedy those symptoms, and ordered follow-up appointments. The court also concluded that the evidence did not show that Lutsey was deliberately indifferent to Slaughter's complaints because she had responded to all of Slaughter's grievances within a few days (if not the same day) and had given him relevant information about his care.

On appeal, Slaughter maintains that Lemens and Lutsey were deliberately indifferent to his health by not providing adequate medical care or scheduling him to see a doctor. Healthcare staff at a prison violate the Eighth Amendment if they intentionally disregard a known, objectively serious medical condition that poses an

excessive risk to a prisoner's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018).

Slaughter first contends that Lemens was deliberately indifferent because she did not schedule an appointment for him to see a doctor after he first reported blood in his stool. He maintains that Lemens—a nurse—could not perform the types of medical tests that a doctor could, so she prevented an accurate diagnosis by treating him without involving a doctor. But Slaughter lacks evidence that Lemens acted with deliberate indifference when she treated him for a stomach virus after examining him multiple times. Even if Lemens was incorrect about the cause of his symptoms, an incorrect diagnosis alone is insufficient to show deliberate indifference. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Slaughter has presented no evidence showing that Lemens's treatment decisions—grounded on her observations and his complaints— were not based on the exercise of her medical judgment. *See Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662–63 (7th Cir. 2016).

Slaughter also argues that a factual dispute exists as to whether Lemens consulted with the prison doctor after she examined him the first time because there is no record evidence that the doctor made a diagnosis based on his symptoms. Slaughter has not, however, presented evidence that refutes the notes in his treatment record that a doctor was consulted and affirmed Lemens's proposed course of care. Furthermore, even if the doctor did not review Slaughter's medical chart, Slaughter still lacks evidence that Lemen's treatment decisions substantially departed from accepted medical practice. *Whiting*, 839 F.3d at 663. Slaughter also maintains that Lemens was deliberately indifferent and retaliated against him by discontinuing his pain medication. As Lutsey explained to him, though, the pain medication he received for his mouth infection was scheduled to lapse ten days after the dentist prescribed it. Additionally, Slaughter has presented no evidence that Lemens was responsible for ordering more medication or that she deliberately failed to order more medication so that he would suffer. *See, e.g., Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013).

Next, Slaughter contends that Lutsey was deliberately indifferent because he alerted her that the nursing staff were not giving him proper treatment, but she did nothing. Lutsey did not examine or treat Slaughter, and she may be liable as a supervisor only for acts that she personally directed or authorized. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011). Slaughter has

presented no evidence that Lutsey personally directed his care. *See Iqbal*, 556 U.S. at 677; *Mitchell v. Kallas*, 895 F.3d 492, 498–99 (7th Cir. 2018) (supervisor not deliberately indifferent when not involved in treatment decisions). Lutsey responded to Slaughter's inquiries and made sure that he was being seen by medical professionals. Her reading of his complaints alone does not demonstrate that she knew that he was receiving inadequate care (even assuming he was) and chose to do nothing. *See Mitchell*, 895 F.3d at 498–99; *Greeno v. Daley*, 414 F.3d 645, 657 (7th Cir. 2005).

We have considered Slaughter's remaining arguments, and none has merit.

AFFIRMED