NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 23, 2020*
Decided October 23, 2020

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-2921

| | |
|---|---|
| MOHAMMAD MANSOORI, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 1:17-cv-01312-MMM |
| | |
| SCOTT MOATS, | Michael M. Mihm, |
| *Defendant-Appellee*. | *Judge*. |

## O R D E R

After arriving at the Federal Correctional Institution in Pekin, Illinois, Mohammad Mansoori repeatedly requested authorization for a pair of soft-soled shoes to relieve foot pain from diabetes and a gunshot wound. The prison's Clinical Director, Dr. Scott Moats, denied his requests, and Mansoori filed this *Bivens* action against him for violating the Eighth Amendment. *See Bivens v. Six Unknown Agents of Fed. Bureau of*

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

*Narcotics*, 403 U.S. 388 (1971). The district court granted Dr. Moats's motion for summary judgment, determining that no reasonable juror could find that he was deliberately indifferent to Mansoori's serious medical needs. We affirm.

Mansoori suffers from many chronic health conditions, including diabetes, and he was first approved to wear soft-soled or "diabetic" shoes in 2008. After his transfer to Pekin in August 2012, Mansoori hoped to continue wearing soft-soled shoes instead of the standard-issue uniform shoes. At an appointment shortly after the transfer, Mansoori told his primary-care physician, Dr. Jeffrey Lee Ho, that the soft-soled shoes ameliorated pain in his legs and feet, which he attributed to a gunshot wound. Dr. Lee Ho assessed Mansoori's feet and authorized him to continue wearing the soft-soled shoes he had brought from his prior prison because of "stage III+ peripheral neuropathy."

Less than a month later, Mansoori asked a nurse for a new pair of soft-soled shoes. The prison's policies require the Clinical Director to approve the purchase of medical shoes. Dr. Moats did not do so. Instead, he consulted with Dr. Lee Ho, who then revoked his authorization for the shoes. Dr. Lee Ho later attested that he reconsidered his initial decision because he was made aware that the Bureau of Prisons' general patient-care guidelines and its 2012 Clinical Practice Guidelines for Management of Diabetes recommended specialty shoes only for those in Risk Categories 2 and 3 under the criteria of the Lower Extremity Amputation Prevention ("LEAP") program. But Mansoori had "no deformity, ulceration, or amputation" of his feet, which placed him in LEAP Category 1. Dr. Lee Ho also considered Mansoori's complaint of neuropathic pain, but concluded that it should be treated with medication. Dr. Lee Ho entered an administrative note in Mansoori's medical record reflecting his updated decision on October 16, 2012. The note stated that Mansoori could wear uniform shoes because he had "a normal gait" and no "chronic, non-healing wounds or ulcers on his feet." Dr. Lee Ho further observed that Mansoori's medical record did not objectively support the neuropathy of which Mansoori complained.

On October 17, 2012, after a nurse saw Mansoori wearing soft-soled shoes, Dr. Moats updated Mansoori's "Medical Duty Status" form to reflect that he was required to wear uniform footwear. Dr. Moats later attested that, when he updated the form, Mansoori could safely wear uniform shoes because he fell into LEAP Category 1: Although he had a "partial loss of protective sensation," he lacked any "deformity, ulceration, or amputation" in his feet.

Mansoori kept asking prison staff for soft-soled shoes and filing grievances about the lack of medical authorization. So, in November 2012, the warden and other prison officials met with Dr. Moats and Mansoori to resolve the issue. Mansoori again explained that soft-soled shoes alleviated his neuropathic pain. But after the meeting, Dr. Moats entered a note in Mansoori's medical record stating that, based on Mansoori's own statements and Dr. Moats's review of his record, Mansoori could safely wear uniform shoes. He further explained that soft-soled shoes have "no evidence[-]based recommendation for use in treating neuropathic pain" and that Mansoori had been given pain medication such as gabapentin for that condition. After 2012, Dr. Moats renewed some of the medications that Dr. Lee Ho had prescribed for Mansoori's neuropathy (acetaminophen and pregabalin) on four occasions, but had no other involvement in Mansoori's treatment for diabetes or neuropathy.

From 2013 to 2018 (when he was released from prison), Mansoori complained of foot pain at some of his many more appointments with Dr. Lee Ho or the nursing staff. They changed and adjusted his medications for neuropathy, but consistently concluded that he could wear standard shoes. Mansoori, however, persisted in requesting soft-soled shoes or, alternatively, other non-uniform shoes that would fit an orthotic insert he had from a previous prison. Ultimately, a prison health services administrator authorized Mansoori to wear non-standard shoes in 2013 and gave him sneakers that fit his insert in 2015. Drs. Lee Ho and Moats always believed uniform shoes were medically appropriate and did not approve new shoes or Mansoori's use of the insert.

After he did not receive another new pair of non-uniform shoes in 2016, Mansoori sued Dr. Moats and some of the prison's administrative staff (but not Dr. Lee Ho). The district court screened the complaint, *see* 28 U.S.C. § 1915A, and allowed Mansoori to proceed only on an Eighth Amendment claim against Dr. Moats. Dr. Moats moved for summary judgment. In opposing the motion, Mansoori failed to respond to Dr. Moats's statement of undisputed material facts. The district court therefore deemed those facts admitted under Central District of Illinois Local Rule 7.1(D)(2)(6)—a decision Mansoori does not challenge on appeal. *See Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017) (Central District of Illinois has discretion to set and enforce local rules). The court entered summary judgment for Dr. Moats, concluding that, based on the undisputed evidence, no reasonable jury could find that he was deliberately indifferent.

On appeal, Mansoori contends that whether he suffered unnecessary pain because Dr. Moats refused to authorize specialized footwear is a disputed fact

precluding summary judgment. The Eighth Amendment prohibits a prison official's deliberate indifference to an inmate's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Dr. Moats has never argued that Mansoori does not have a serious medical condition, so we consider only whether a reasonable juror could conclude that Dr. Moats knew of, but disregarded, his medical need. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). A physician's professional judgment is given deference, however, unless "no minimally competent professional would have so responded." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Mansoori failed to refute the evidence that Dr. Moats's refusal to authorize specialized footwear was the product of his professional judgment. *See id.* We have held before that a prison physician's decision to deny an inmate soft-soled shoes is not deliberately indifferent when supported by the inmate's medical record. *See Norfleet v. Webster*, 439 F.3d 392, 396–97 (7th Cir. 2006). When Dr. Moats made his decision in 2012, Mansoori's medical record showed that he had lost some sensation in his left foot but that his feet were free from irritation, ulcers, or deformities. It also included Dr. Lee Ho's assessment that uniform shoes were appropriate because Mansoori had "a normal gait" and no "chronic, non-healing wounds or ulcers on his feet." Although some records documented his complaints of neuropathic pain, Mansoori took medication for that condition, which Dr. Moats considered appropriate treatment. Based on the medical history, Dr. Moats determined that Mansoori fell into LEAP Category 1 and could safely wear uniform shoes. Mansoori insists in his brief that he was in a higher risk category and that Dr. Moats should have examined him personally. But Mansoori does not have medical evidence undermining Dr. Moats's conclusion—which his primary-care physician, Dr. Lee Ho, agreed with after he reviewed the relevant criteria. *Norfleet*, 439 F.3d at 396 ("It is undisputed that Dr. Webster reviewed Norfleet's medical history in making the determination that Norfleet did not need soft-soled shoes."). Therefore, Mansoori cannot show that Dr. Moats's decision not to authorize specialty shoes was "blatantly inappropriate" under the circumstances. *See Pyles*, 771 F.3d at 409.

Mansoori emphasizes that other doctors authorized him to wear soft-soled shoes in the past. But disagreement among medical professionals is insufficient evidence of deliberate indifference. *Id.* Dr. Moats did not simply refuse to authorize the purchase; he reviewed Mansoori's medical record and consulted with Dr. Lee Ho, so his decision is entitled to deference. Although Mansoori would have preferred soft-soled shoes, he was not entitled to his preferred treatment, only to adequate care. *See Johnson v.*

*Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). On this record, he cannot establish that the deprivation of soft-soled shoes violated that standard. *See Norfleet*, 439 F.3d at 396–397.

AFFIRMED