NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 17, 2022*
Decided October 18, 2022

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 21-2852

| | |
|---|---|
| JAMES L. KIRK, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Western District of |
| | Wisconsin. |
| *v.* | |
| | No. 18-cv-110-bbc |
| TAMMY MAASSEN, et al., | |
| *Defendants-Appellees.* | Barbara B. Crabb, |
| | *Judge.* |

**O R D E R**

James Kirk challenges the district court's summary-judgment ruling on his claims that the medical staff at his former prison treated his heart condition with

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

deliberate indifference. He argues that the district court overlooked key medical evidence that, he believes, confirms that the defendants' treatment of his condition was inappropriate. We affirm.

We construe the following facts in the light most favorable to Kirk. *See Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021). The events in question took place between 2015 and 2017, while Kirk was housed at the Jackson Correctional Institution in Black River Falls, Wisconsin. Kirk has a history of high blood pressure, multiple heart attacks, coronary artery disease, ischemic cardiomyopathy (a decrease in the heart's ability to pump blood), and congestive heart failure. He took medication at the prison for his cardiovascular issues and frequently saw prison medical staff and specialists off site for issues related to his heart. Shortly after his arrival at the prison in 2015, he underwent several diagnostic tests, including chest X-rays and an echocardiogram, in response to his complaints about shortness of breath and chest pain.

In July 2016, Kirk continued to complain of shortness of breath and chest pain. A nurse clinician at the prison, Georgia Kostohryz, checked his blood pressure, heart rate, and oxygen level—all of which she found to be normal—and determined that the situation was not an emergency. Nevertheless, Kirk was given an electrocardiogram (EKG), which revealed abnormalities, including an "inferior infarct" and potential ischemia. (Kirk maintains, however, that the EKG results prove that he suffered a heart attack. He asserts that Kostohryz and nurse clinician Cheryl Marsolek told him that the EKG results were normal and that his chest pain may be caused by the weather. Kostohryz and Marsolek both deny making such statements.)

At a follow-up appointment the next day, Kirk told Dr. W. Brad Martin, a prison physician, and Debra Tidquist, an advanced practice nurse prescriber, that his chest pain felt like the pain he had experienced before previous heart attacks. He asked to be taken to the hospital, but Martin and Tidquist denied his request. Martin explained that it was difficult to determine whether Kirk's issues were cardiac or pulmonary, especially because Kirk had been a smoker for over 20 years. Martin ordered a spirometry test (a pulmonary function test that measures airflow in and out of the lungs). The outside pulmonologist who conducted the test concluded that Kirk likely had a mild obstructive pulmonary defect and might benefit from a bronchodilator. Tidquist then ordered an albuterol inhaler. But Kirk refused to use the inhaler consistently, stating that his chest pain had since worsened. Throughout August 2016, he continued to complain about chest pain, as well as left-arm and leg pain. He insisted that his problems were related to his heart, not his lungs, and several times asked to go to the hospital but was rebuffed.

In September 2016, Kirk fell after experiencing severe chest pain and lightheadedness. He was taken to a hospital's emergency room and given an EKG, which indicated left bundle branch block (a problem with the left branch of the electrical conduction system of the heart). He then was transferred to another hospital, where doctors performed a cardiac catheterization and an angiogram. The procedure showed that the left anterior descending artery was open and that there was chronic total obstruction of a coronary artery with collateralization (the formation of new vessels to permit blood flow). (Kirk understands the procedure differently: he states that the surgeon removed new blockages during the procedure. But the medical record does not reflect that the cardiologist performed any intervention.) Kirk's troponin level suggested that he did not have a heart attack. The cardiologist assessed Kirk's condition as unstable angina and congestive heart failure. Kirk was given isosorbide mononitrate, which resolved his chest pain.

In 2018, Kirk sued his medical providers—Martin, Tidquist, Kostohryz, Marsolek, and Tammy Maassen, a health-service manager and nursing supervisor at the prison—for deliberate indifference to his medical needs in violation of the Eighth Amendment. Given Kirk's deteriorating condition, the court recruited counsel to help Kirk litigate the case.

The court ultimately entered summary judgment for the defendants. The court explained that Kirk did not submit evidence showing that Tidquist's or Martin's treatment decisions were improper or not based on medical judgment. As for nurses Marsolek and Kostohryz, the court found that the evidence showed that neither had ignored Kirk's complaints or based treatment decisions on anything other than their medical judgments about what was appropriate for Kirk under the circumstances. And because the evidence showed that Kirk already was receiving constitutionally adequate care, the court concluded that Maassen did not violate the Constitution by failing to intervene.

Kirk sought reconsideration of the court's decision, arguing that the court ignored evidence (e.g., the results of Kirk's catheterization procedure and July 2016 EKG) supporting his claim that defendants ignored a heart attack and other serious problems. The court denied the motion. The court explained, first, that many of Kirk's arguments were based on inadmissible hearsay (e.g., Kirk's assertion that the cardiologist who performed his catheterization said that she "undid blockages"). The court added that Kirk's interpretations of his medical records and symptoms (e.g., that he should have been taken to a hospital sooner and placed on a waiting list for a heart transplant) were insufficient to create a genuine dispute of material fact.

Kirk appeals, but the appellees raise a threshold jurisdictional argument that this appeal is untimely. They argue that Kirk's motion for reconsideration and notice of appeal were untimely because the court received these submissions only after the relevant deadlines, *see* FED. R. APP. P. 4(a)(4)(A), and Kirk cannot receive the benefit of the prison mailbox rule because he did not state that first-class postage had been prepaid. The appellees rely on language from a former version of Rule 4(c)(1) of the Federal Rules of Appellate Procedure stating that an inmate's notice of appeal is timely if it is deposited in the institution's mail system on or before the last day for filing and the inmate files a declaration setting forth the date of deposit and stating that first-class postage "has been prepaid."

But the appellees' argument relies on an outdated version of Rule 4(c). The rule, which was amended in 2016, no longer calls for a statement that postage "has been prepaid." The rule now requires that the documents be deposited in an institution's internal mail system before the last day for filing and accompanied by evidence that postage was prepaid or "[a] declaration . . . setting out the date of deposit and stating that first-class postage *is being* prepaid." FED. R. APP. P. 4(c)(1)(A)(i) (2016) (emphasis added). This revised language "reflects the fact that inmates may need to rely upon the institution to affix postage after the inmate has deposited the document in the institution's mail system." FED. R. APP. P. 4 advisory committee's note to 2016 amendment. Kirk complied with the rule by stating, under penalty of perjury, that he was timely depositing his envelopes in the prison's mailbox "for the mailroom staff to affix the correct amount of postage." The prison used metered mail on Kirk's envelopes, so Kirk could not affix first-class postage and had to drop off his envelopes for mailing.

We thus proceed to the merits of this appeal. Kirk contends that the court erred by ignoring medical records that, he believes, confirm that he suffered a heart attack, that new blockages were removed, and that the defendants improperly treated his heart condition. In his view, the court wrongly excluded his EKG and catheterization results instead of deeming them admissible under the hearsay exception for a "Statement Made for Medical Diagnosis or Treatment." FED. R. EVID. 803(4).

Kirk misapprehends the nature of the district court's ruling. The evidence that the court characterized as inadmissible hearsay was not the medical records, but the "alleged out-of-court statements made by non-defendants"—such as the alleged statement by his cardiologist that Kirk's heart had blockages that he had removed during the procedure. A litigant may not rely on inadmissible hearsay to avoid summary judgment. *See Anderson v. City of Rockford*, 932 F.3d 494, 509 (7th Cir. 2019). Further, the documents Kirk points us to do not support his contention that he had a heart attack or had new blockages removed.

Our review of the court's summary judgment ruling is plenary, *see McCottrell v. White*, 933 F.3d 651, 656 n.3 (7th Cir. 2019), and no reasonable jury could conclude on this record that the defendants acted with deliberate indifference toward Kirk's serious medical needs. To defeat summary judgment, Kirk needed to provide evidence that, among other things, the defendants knew of but deliberately disregarded his condition. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). But as the district court correctly concluded, he did not meet this burden. He did not submit evidence, for instance, that any defendant made a treatment decision that was blatantly inappropriate or so far afield of accepted medical standards to raise an inference that it was not based on a medical judgment. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021); *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Kirk may disagree with his medical providers about the proper course of treatment, but that disagreement—by itself—generally is insufficient to establish a violation of his Eighth Amendment rights. *Pyles*, 771 F.3d at 409.

AFFIRMED