In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1263

RAYMOND GARVIN,

Plaintiff-Appellant,

v.

DAVID ARMSTRONG, DR. JOHN H. OBERHELMAN,
and FLORA PINNELL,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 CV 4233--James T. Moody, Judge.

Argued November 28, 2000--Decided January 12, 2001

 Before FAIRCHILD, DIANE P. WOOD, and EVANS, Circuit
Judges.

 EVANS, Circuit Judge.  In this action, brought
under 42 U.S.C. sec. 1983, Raymond Garvin, a
former inmate of the DuPage County (Illinois)
jail, alleges that Dr. John Oberhelman, the
medical director at the jail, was deliberately
indifferent to his serious medical need for an
asthma inhaler. The district court granted
summary judgment for Dr. Oberhelman./1
 Garvin has taken asthma medication for many
years. When he entered the jail on March 20,
1997, however, his inhaler was taken away from
him as a result of jail policy. He remained at
the jail until July 17, 1997.

 Dr. Oberhelman has been medical director at the
jail for 27 years and during that time has
treated many patients with asthma. Although he
acknowledges that inmates of Illinois prisons are
allowed to keep inhalers on their persons, he
contends that his policy for the DuPage County
jail is required by the Illinois County Jail
Standards. Those standards say that all drugs,
including over-the-counter medication, must be
secured and accessible only to designated staff.
Medications also are to be administered only in
the presence of a medical staff member or jail
officer. Dr. Oberhelman defends his policy as a
security measure, claiming that inhalers are

metal and can be fashioned into weapons. In addition, the substance in inhalers can induce a high if the device is misused. On the other side of the ledger, it is also the policy or custom at the jail that inhalers be provided to inmates within 4 minutes of their requesting them.

During the first 5 days Garvin was in the jail, he received all of the medication Dr. Oberhelman ordered. In fact, he received medication on 29 occasions. On March 25, 5 days after he arrived at the jail, while Dr. Oberhelman was examining him, Garvin complained that he was not getting his medication soon enough after it was requested. And, in fact, no one denies that the sooner an asthma patient receives treatment-- e.g., an inhaler-- when an attack is coming, the better. In response to Garvin's complaint about delay, Dr. Oberhelman transferred him from the general population to the infirmary, where he was housed 15 to 20 feet from where his inhaler was stored and 5 to 10 feet from a guard. Nevertheless, Garvin contends that on one occasion it took 45 minutes to receive his inhaler.

During Garvin's 119 days at the jail, he received medication on 899 occasions. The nursing staff gave him his inhaler 329 times. During this time, Garvin never required hospitalization or emergency treatment due to his asthma. And during the 27 years that Dr. Oberhelman has been medical director, no inmate has ever before filed a complaint about the jail's inhaler policy.

In the district court, Garvin's complaint was dispatched on summary judgment. Accordingly, we review the judgment de novo. Washington v. Summerville, 127 F.3d 552 (7th Cir. 1997). Summary judgment may be granted only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. We construe the facts and inferences in the light favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

Garvin asserts that he was a pretrial detainee at the DuPage County jail and that his claim arises under the Fourteenth Amendment. But he was actually at the jail while serving a state prison sentence, having been transferred there only to await proceedings on a new charge. So his claim must be judged under the Eighth Amendment, but this is of no great moment for there is little practical difference between the standards utilized under the two amendments. Weiss v. Cooley, 230 F.3d 1027, 1032 (7th Cir. 2000). A plaintiff must show two things: that he had a serious medical need and that a defendant was

deliberately indifferent to it. Estelle v. Gamble, 429 U.S. 97 (1976). A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation. Estate of Cole by Pardue v. Fromm, 94 F.3d 254 (7th Cir. 1996). Nor does negligence constitute deliberate indifference. Farmer v. Brennan, 511 U.S. 825 (1994).

Asthma, depending upon its degree, can be a serious medical condition. For purposes of this appeal, we will assume that Garvin's condition was sufficiently serious. His claim, however, fails on the second prong of the Gamble test.

First, Garvin does not allege that Dr. Oberhelman personally failed to take actions which would constitute deliberate indifference. The only actions which could arguably meet that standard are those of the persons who occasionally took what might be considered an excessively long time to provide him with his inhaler. But Garvin does not allege that Dr. Oberhelman personally was responsible for the delay. Individual nurses are charged with carrying out Dr. Oberhelman's orders and they are the ones responsible for any delay in Garvin receiving his inhaler. As we repeatedly say, a supervisor cannot be held vicariously liable for the actions of others. Lanigan v. Village of East Hazel Crest, Illinois, 110 F.3d 467 (7th Cir. 1997).

Furthermore, Dr. Oberhelman took steps which contradict a finding of deliberate indifference. Soon after Garvin arrived at the jail, he complained about the delay in receiving his inhaler. Dr. Oberhelman moved him from the general population to the medical unit so the inhaler could be retrieved more quickly when needed. In the medical unit, Garvin was housed no more than 20 feet away from where his inhaler was kept. Dr. Oberhelman also prescribed Theodur, a tablet which acts as a bronchodilator; Prednisone, a steroid used for the treatment of asthma; and antibiotics for the treatment of asthmatic bronchitis. In addition, an asthma nebulizer was purchased by the jail especially for Garvin's use. To put it mildly, the facts in this case show that Garvin received considerable medical care during the time he was at the jail.

Garvin's claim against Dr. Oberhelman, then, necessarily is that the jail policy is so medically unreasonable that it rises to the level of deliberate indifference. Yet the policy is supported by the Illinois County Jail Standards. See Ill. Admin. Rules, Sec. 701, et seq. The standards provide:

Security of medical supplies shall be maintained at all times. Drugs, including over-the-counter medication, and other abusable medical supplies shall be secured and accessible only to designated staff.

Ill. Admin. Rules, Sec. 701.90(f)(1). Even were it not for the standard, we would find it very difficult to find that the DuPage County jail policy was unconstitutional. There was a policy at the jail that asthmatics receive their inhalers within 4 minutes of their asking for them. A nurse observed the use of the inhaler and, in Garvin's case, instructed him on how better to use it. Garvin was allowed to use his inhaler twice a day, in addition to the times he requested it based on need. The fact that a nebulizer was purchased detracts from any conclusion that Dr. Oberhelman's attitude was one of indifference to those he was treating in the jail and to Garvin in particular. The treatment Garvin received does not even come close to meeting the deliberate-indifference standard, and the judgment of the district court is, accordingly,

AFFIRMED.

/1 Originally there were four other defendants, two of whom were never served. The other two were nurses at the jail. These defendants do not concern us because Garvin did not appeal the judgment dismissing his case against them.