NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 17, 2014[*]
Decided July 18, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-1695

| | |
|---|---|
| RALPH MLASKA, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 11-cv-2084 |
| PAUL TALBOT, et al., *Defendants-Appellees.* | Sara Darrow, *Judge.* |

**O R D E R**

Illinois prisoner Ralph Mlaska appeals the grant of summary judgment to three prison medical officials and one non-prison urologist in this suit under 42 U.S.C. § 1983 asserting deliberate indifference to his penile and testicular pain. We affirm.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

In early 2011 Mlaska sued a large number of defendants over the treatment he had received at the Danville Correctional Center during the previous year for his genital pain. He also asserted that Paul Talbot, one of the doctors at Danville, violated his right to privacy by allowing a female prison guard to be present during examinations in order to embarrass him, and to inhibit him from articulating complaints about his genitals.

Judge McCuskey screened Mlaska's complaint under 28 U.S.C. § 1915A, and allowed Mlaska to proceed on his deliberate-indifference claim against three doctors and a nurse: Talbot; Arthur Funk, a doctor and administrator with a correctional health care company; April Walblay, a nurse at Danville; and Richard Wolf, a urologist at a private clinic who accepted referrals from the prison. Judge McCuskey, however, dismissed Mlaska's privacy claim, concluding on the basis of *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995), that he did not sufficiently allege being subjected to the unnecessary or wanton infliction of pain.

Mlaska promptly moved the court to recruit counsel, stating that his case would involve the marshaling of medical evidence and that he, as a prisoner, was unlikely to be able to do that effectively without an advocate. Judge McCuskey denied the motion, explaining that he wanted to wait to make sure that the issues raised in the case were "substantial and meritorious." Mlaska then requested that an independent expert be appointed to assess the medical evidence in the record, and Judge McCuskey denied that motion as well, stating that Mlaska had no right to an independent expert in a civil case. Eleven days later Mlaska again asked for an expert, and the judge summarily denied this request.

Discovery ensued, and the following facts (gleaned from a record spanning 4262 pages), presented in the light most favorable to Mlaska, were introduced. *See Williams v. City of Chicago*, 733 F.3d 749, 752 (7th Cir. 2013). Mlaska, upon being transferred to Danville in April 2010, was seen by Talbot on sixteen occasions between April 2010 and the end of 2011. Mlaska repeatedly sought treatment for pain in his penis and testicles. In health care requests and consultations with prison medical officials, Mlaska described his pain variously as dull, sharp, throbbing, stabbing, burning, and radiating through his testicles into his abdomen. The pain became unbearable, he asserted, if he sat or stood in one position for too long, and walking was so painful that he had taken to staying in his bed. Scarring on his penis, he added, restricted blood flow and made obtaining an erection both difficult and painful. In response to Mlaska's persistent complaints of pain, Talbot regularly examined Mlaska but at no time found any

abnormalities. No abnormalities had been found either during examinations that Mlaska underwent at his previous facility, including one exam conducted by an outside urologist, though one doctor there had recommended a penile angiogram or penile ultrasound to further explore Mlaska's condition.

On one visit to the infirmary in July 2010, Mlaska was seen by Nurse April Walblay for intense pain and swollen testicles. According to Mlaska, his blood pressure was higher than normal during that visit, but Walblay refused to note that on his chart, put his complaints into his medical file, or schedule him to see a doctor.

A month later Arthur Funk, the Regional Medical Director for Wexford Health Sources, Inc., examined Mlaska at the request of the Medical Director of the Illinois Department of Corrections. On the first examination, Funk found no anomalies but, in light of Mlaska's complaints of severe pain, offered to recommend that Mlaska see an outside urologist should his condition not improve. At the second examination two weeks later, Funk reported that a urinalysis and a pelvic x-ray had turned out normal, but he agreed to allow Mlaska to see the outside specialist.

Several weeks later Mlaska was seen by Richard Wolf, a urologist at the Carle Clinic in Urbana, who reported that Mlaska's penile exam was normal, suggested that a Doppler flow study might be helpful, and opined that Mlaska's problem likely was neurological rather than physical. Based on Wolf's report and conversations with Funk, Talbot concluded that there was no medical reason to order a Doppler flow study. Talbot's continued physical examinations revealed no abnormalities and Talbot continued to order counseling and prescribe ibuprofen for Mlaska's pain.

As the litigation progressed, the case was reassigned to Judge Darrow, after which Mlaska promptly renewed his motion for recruitment of counsel. Mlaska also asked her to reconsider all of his previously rejected motions, including his request for an expert. Judge Darrow denied his motions; she observed that Mlaska had proven himself sufficiently competent to articulate his claims and litigate them, and she saw no reason to question the soundness of Judge McCuskey's earlier rulings.

Six months later Judge Darrow granted summary judgment to Wolf, concluding that Mlaska had not shown that the care provided by Wolf—during his single examination—departed sufficiently from accepted medical standards to constitute an Eighth Amendment violation.

One week later, Mlaska again sought counsel, but Judge Darrow summarily denied his request "for the reasons previously stated by the court." Four months later Mlaska again sought counsel or an expert. His request for counsel was denied without explanation, though the judge stated that Mlaska could renew his motion if the case proceeded to trial. She denied his request for an expert because Mlaska already had been examined by two specialists whose findings were included in the record.

The district court eventually granted summary judgment to the defendants, concluding that Mlaska failed to show that any of them was deliberately indifferent to his complaints of pain. The court stated that both Talbot and Funk "repeatedly examined the plaintiff, offered him medication and sent him to two outside specialists, but nothing revealed a physical cause for his symptoms." Mlaska's legal claims, the court concluded, were nothing more than dissatisfaction or disagreement with the treatment he received. As for Mlaska's claim against Nurse Walblay, the court concluded that he produced no evidence supporting his claim that he suffered from a serious medical condition when he saw her in July 2010, or that her purported delay in arranging for treatment or testing had, or could have had, any effect on his condition.

On appeal Mlaska first challenges the district court's conclusion that his claims simply reflect a dispute about the proper course of treatment. Mlaska points out that his doctors recommended potential tests (a Doppler flow study of his penis, a penile ultrasound, and a penile angiogram) in order to further understand his complaints, but none was performed. Mlaska argues that the defendants' failure to follow through on any of these recommendations gives rise to an inference that the defendants recognized the seriousness of his condition, but willfully refused to investigate it or treat it.

The record does not support Mlaska's argument. Although a defendant's failure to follow through on the orders of another doctor may give rise to an inference of deliberate indifference, *see, e.g.*, *Gil v. Reed*, 381 F.3d 649, 663–64 (7th Cir. 2004), Mlaska has not produce sufficient evidence to support such an inference here. The defendants disagreed with the recommendations of a doctor at Mlaska's former facility (who is not a specialist), but disagreement about a course of treatment does not sustain a claim of deliberate indifference. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001). Wolf was a specialist, but he presented his recommendation (i.e., to administer a Doppler flow study) merely as a potential option, not a necessary course of action, so this case is not one where treating doctor's willfully failed to follow through on a specialist's orders.

Ultimately, then, Mlaska's quarrel is with the defendants' judgment about how to treat his pain. But a disagreement with a medical professional's exercise of judgment is generally insufficient to establish deliberate indifference. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). And Mlaska has produced nothing from which a jury could infer that the defendants' chosen course of treatment departed so far from the standards of the medical profession that they were deliberately indifferent to his pain. *See Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008); *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). Talbot examined the plaintiff almost monthly, regularly prescribed medication to treat his pain, and even suggested counseling for suspected neurological problems. So long as Talbot's diagnosis was consistent with Mlaska's symptoms, and Talbot thought he was appropriately treating them (and the record does not suggest otherwise), he was not deliberately indifferent. *Cf. Walker v. Peters*, 233 F.3d 494, 499–501 (7th Cir. 2000). As for Funk, he did perform tests on Mlaska—just not the particular tests Mlaska desired—and referred Mlaska to a specialist; those actions reflect concern for Mlaska's symptoms, not indifference to them. And Wolf examined Mlaska only on a single occasion, so any disagreement with Wolf is about his findings and prescribed course of treatment, but, as we have said, that is insufficient to show deliberate indifference.

Mlaska also challenges the district court's dismissal of his privacy claim at screening. He maintains that he sufficiently stated a claim for the violation of his privacy rights by alleging that Talbot forced him to expose his genitals and discuss his medical complaints before female guards for the purpose of embarrassing him and inhibiting any expression of his condition. But prisoners have no general right not to be seen naked by guards of the opposite sex. *See, e.g.*, *Johnson*, 69 F.3d at 146 (opposite-sex guards entitled to observe every detail of prison life); *Oliver v. Scott*, 276 F.3d 736, 746 (5th Cir. 2002) (opposite-sex surveillance of bathrooms and showers constitutional); *Timm v. Gunter*, 917 F.2d 1093, 1101 (8th Cir. 1990) (opposite-sex pat searches permissible under Fourth Amendment).

Mlaska last argues that the district court erred by refusing to recruit counsel or appoint an independent expert. But regarding his requests for counsel, Judge Darrow did not abuse her discretion in finding that Mlaska was competent to navigate the litigation process and could adequately articulate his claims. *See Bracey v. Grondin*, 712 F.3d 1012, 1016–17 (7th Cir. 2013); *Pruitt v. Mote*, 503 F.3d 647, 658–59 (7th Cir. 2007) (en banc). Likewise, regarding his request for appointment of an expert, Judge Darrow did not abuse her discretion by concluding that she did not need the benefit of additional

expert testimony to supplement the findings of two specialists that were already in the record. *See* Fed. R. Evid. 702.

We have considered Mlaska's remaining arguments, but they warrant no further discussion.

**AFFIRMED**.