In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-1942

DANIEL PROCTOR,

*Plaintiff-Appellant,*

*v.*

KUL SOOD, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 14-1228 — **Sue E. Myerscough**, *Judge.*

SUBMITTED JULY 5, 2017 — DECIDED JULY 13, 2017

Before POSNER, KANNE, and SYKES, *Circuit Judges.*

PER CURIAM. Daniel Proctor, an Illinois prisoner who was confined for seven years at Hill Correctional Center, suffers from chronic abdominal pain and spasms in his colon. He sued a number of medical providers working at Hill for Wexford Health Sources—the contractor providing healthcare to Illinois prisoners—as well as several corrections officials, claiming that they violated the Eighth Amendment by not ordering a colonoscopy and endoscopy

to diagnose his persistent abdominal pain. The district court granted summary judgment for the defendants. We affirm that decision.

The pertinent facts are not in dispute, except where noted, and we recount them in the light most favorable to Proctor, as the opponent of summary judgment. *See Dewitt v. Corizon, Inc.*, 760 F.3d 654, 655–56 (7th Cir. 2014). Proctor—who is now 55—was confined at Hill from 2007 until 2014, and during this time all of his medical care was provided by Wexford employees working at the prison. He had been experiencing daily pain in his lower abdomen and occasional colon spasms since 1999, when he was confined at a different prison. The abdominal discomfort limited his participation in daily activities, including running and lifting weights, and his spasms were so sharp that they woke him at night. Abdominal and upper and lower gastrointestinal X-rays taken in 2000 had shown nothing remarkable. The discomfort intensified beginning in 2007, progressively worsening to constant, mild pain, day and night. The colon spasms also intensified to the point of flaring for about fifteen minutes every other day and causing excruciating pain.

Proctor first sought and began receiving ongoing medical care for his abdominal and colon pain in 2006. He initially took Metamucil, a fiber supplement, to treat the rectal pressure from his colon spasms. After Proctor arrived at Hill, a nurse practitioner, Pamela Bloomfield, ordered more X-rays and an ultrasound of his abdomen, but the results were unremarkable. Bloomfield then ordered further tests to determine if a bacterial infection might be causing the abdominal discomfort. Those tests also returned negative results. Proctor started a regimen of Bentyl, an antispasmodic drug, to

treat his abdominal pain and spasms. Shortly thereafter, in 2008, Proctor made a one-time visit to Dr. Richard Shute, who diagnosed possible irritable bowel syndrome (commonly called IBS) and a spastic colon.

At a routine examination in 2009, Proctor told Amy John, a physician assistant, that he was having abdominal tenderness but getting some relief with the Bentyl. John's physical exam showed nothing, but nevertheless she ordered a battery of blood tests. The results were normal. John examined Proctor again a few months later because he still was complaining of cramping and abdomen pain. As before, she found nothing noteworthy. She advised Proctor to avoid dairy products that worsened his symptoms, and she ordered a dozen tests for inflammation, thyroid function, pancreatic function, digestive and bacterial infections, parasites, and antibodies related to celiac disease. All of these tests returned normal results. John switched Proctor from Bentyl to Levsin, another antispasmodic medication that provided additional relief. When Proctor reported increased spasms, John temporarily raised his Levsin dosage. Proctor last visited John in July 2011.

Over time Proctor became increasingly insistent that he should see a gastroenterologist for a colonoscopy and endoscopy. Proctor complained of intense colon pain to Dr. Kul Sood in 2011. Dr. Sood reviewed Proctor's medical history and performed a physical exam. He concluded that Proctor could be suffering from IBS or from diverticulitis (an infection of small pouches that develop on the intestines), and he prescribed a course of antibiotics to treat the possible infection. Dr. Sood also renewed the Levsin prescription. He gave the same probable diagnoses when he saw Proctor again in

late 2012. He ordered another battery of tests, switched Proctor back to Bentyl (the Levsin had caused adverse side effects), and added an antigas medication. Once again the tests results were normal. Dr. Sood advised Proctor to avoid eating rice, milk, beans, and gluten if possible.

In May 2013, Proctor reported to Bloomfield, the nurse practitioner, that he was suffering from ongoing abdominal pain, alternating constipation and multiple bowel movements each day, and excessive gas. He also told Bloomfield that he was experiencing bloating and cramping, but not bloody or mucousy diarrhea, nausea, or vomiting. Bloomfield continued the Bentyl, added a prescription medication to treat cramping and muscle pain, and prescribed a stool softener and a laxative to treat his bowel symptoms. Bloomfield monitored Proctor's condition during frequent visits throughout 2013 and 2014. Proctor had kept a journal describing his daily abdominal pain, which he consistently rated as a 1 out of 10 except for periods of excruciating pain due to his colon spasms. At one of his visits, Proctor insisted that his journal entries be added to his medical file, but Bloomfield declined. Like Dr. Sood, previously, she recommended dietary changes, including eating fewer beans and soy products and drinking more water. Dr. Sood also saw Proctor multiple times in 2014 and prescribed fiber supplements to address his irregular bowel movements. But he too declined to add Proctor's journal entries to the medical file.

Proctor filed numerous grievances, complaining that these Wexford employees had not eliminated his persistent pain or even definitely diagnosed its source. He insisted on having more diagnostic tests, including a colonoscopy, and said he could not abide the dietary advice to avoid beans,

soy, and milk because the prison's meal plan would not accommodate him. All of these grievances were denied on the recommendation of Lois Lindorff, a Department of Corrections employee serving as the administrator of Hill's healthcare unit, who advised Proctor to research the appropriate diet to manage his symptoms and to address his concerns with the healthcare providers. Lindorff stated that only a doctor could request additional testing. Hill's warden and the director of the Illinois Department of Corrections approved the denials.

Proctor sent a copy of one grievance to Dr. Louis Shicker, the medical director for the Department of Corrections, asking for a referral to an outside specialist. After reviewing Proctor's medical file, Dr. Shicker replied that medical staff were monitoring his condition and advised Proctor to make better dietary choices at the prison commissary. Proctor also sent a copy to Wexford Health Sources, which replied that he should follow the grievance procedure at Hill.

Proctor filed suit under 42 U.S.C. § 1983 in June 2014. He claimed that nurse practitioner Bloomfield, physician assistant John, Dr. Shute, Dr. Sood, and Wexford (the "Wexford defendants") acted with deliberate indifference by not ordering a colonoscopy or endoscopy and not diagnosing his condition with certainty. He contended that Wexford had a policy of denying referrals to outside specialists in order to save costs. Proctor also claimed deliberate indifference by healthcare administrator Lindorff, medical director Dr. Shicker, the warden, and the director of the Department of Corrections (the state defendants) because they processed his grievances yet never sent him to an outside specialist. Proctor asked the district court to recruit a lawyer to assist

him. The district court denied that motion without prejudice, reasoning that Proctor had some litigation experience and could testify about his symptoms. *See Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007).

After that, in October 2014, Proctor was transferred to Big Muddy River Correctional Center, where he was approved to receive a colonoscopy and other tests. The colonoscopy, a CT scan of his abdomen and pelvic region, and an ultrasound of his kidney revealed minimal diverticula (the small pouches on the intestines), a lesion on the left kidney, and hernias in his groin and nave. Proctor viewed the results as abnormal and indicating a condition other than IBS, but his physician at Big Muddy River concluded that the tests had shown him to have a healthy colon. The diverticula were asymptomatic, the doctor opined, and clinically insignificant. Moreover, the doctor added, the hernias were not located in the lower abdomen where Proctor was experiencing pain, and the kidney lesion did not show any significant problem.

Following discovery all of the defendants moved for summary judgment. Dr. Shicker pointed out that he had reviewed the medical file and concluded that Proctor was receiving appropriate care. Lindorff said she had no authority to refer Proctor to an outside specialist. And the warden and director disclaimed personal knowledge of Proctor's medical issues and insisted they had relied on medical personnel at Hill to make treatment decisions.

The four Wexford defendants submitted affidavits insisting that Proctor had been accurately diagnosed with IBS and appropriately treated. Dr. Sood averred that a definitive test isn't available for IBS, which is characterized by gastrointes-

tinal complaints. In fact, he said, diagnostic tests might not show anything unusual despite symptoms like abdominal pain, disruption of bowel movements, gas, and bloating. The cause of IBS is unknown, Dr. Sood explained, so the condition is treated symptomatically with antispasmodic drugs like Bentyl and Levsin and with other medications to alleviate diarrhea and constipation. He ruled out alternatives like Crohn's disease and colitis because Proctor had never experienced bloody or mucousy diarrhea, his test results had been normal, and, in Dr. Sood's opinion, he had not gotten significantly worse during the previous fifteen years. Dr. Shute likewise opined that Proctor's complaints and history were consistent with IBS, as did nurse practitioner Bloomfield and physician assistant John.

Proctor responded to the Wexford defendants with medical literature that, in his view, establishes that a colonoscopy is essential to diagnose IBS and rule out Crohn's disease, colitis, and stomach cancer. One of those submissions, an entry from the Merck Manual, simply explains that physical examinations and tests on patients with IBS often produce normal results and, thus, other procedures—including colonoscopies—"sometimes" are used to rule out other causes. Another of Proctor's submissions, from the National Institutes of Health, recommends, but does not mandate, colonoscopies and endoscopies for persons over 40 who experience abdominal pain and colon spasms. Proctor did not address the state defendants' contentions. After submitting his response, Proctor renewed his request for assistance in obtaining counsel.

The district court again declined to recruit counsel, reasoning that Proctor appeared capable of litigating the case

himself because he had described his medical condition adequately and marshaled relevant facts and case law in support of his Eighth Amendment claim. The court then granted summary judgment for the defendants on the ground that, while Proctor's condition is objectively serious, he lacked evidence from which a jury could conclude that the defendants had been deliberately indifferent in declining to order further diagnostic testing. Proctor had told the healthcare providers that various prescriptions helped alleviate his symptoms, and in his daily journal entries he had documented only mild pain. The court noted that Proctor had not described symptoms consistent with Crohn's disease (e.g., bloody stool) or stomach cancer (e.g., nausea, vomiting, and unintentional weight loss), thus undermining the contention that a colonoscopy should have been done sooner to rule out other conditions. The Constitution does not confer a right to see a specialist or undergo a colonoscopy, the court said, and, in any event, Proctor had received a colonoscopy after his transfer to Big Muddy River and the results were normal. A reasonable jury could not find that the healthcare providers were deliberately indifferent, the court concluded, and thus neither could Wexford be liable under § 1983. As for the state defendants, the court added, they were entitled to rely on the medical judgment of the healthcare professionals.

On appeal Proctor argues that he raised genuine disputes of material fact about the severity and diagnosis of his condition. The district court erroneously relied on his daily observations of mild abdominal pain, he says, because those journals were incomplete—he had stopped logging his pain after Bloomfield and Dr. Sood refused to include the journals in his medical record. The severity of his pain warranted further tests, Proctor says, and the defendants' choice to pro-

vide "less efficacious" treatment amounted to deliberate in-
difference to his pain. Furthermore, Proctor contends, the
results of the colonoscopy and CT scan demonstrate that IBS
may be an incorrect diagnosis because the tests show mini-
mal diverticula, two hernias, and a kidney lesion. He sug-
gests a panoply of conditions he might be suffering from.

We agree with the district court that a jury could not rea-
sonably find that the defendants were deliberately indiffer-
ent to Proctor's medical condition. *See Petties v. Carter*, 836
F.3d 722, 727 (7th Cir. 2016) (en banc), *cert. denied*, 137 S. Ct.
1578 (2017). Proctor's abdominal pain and colon spasms
were investigated thoroughly, and that investigation sub-
stantiated only a diagnosis of IBS. Over the course of treating
him, the medical professionals routinely performed physical
exams and ordered X-rays, an ultrasound, bloodwork, stool
cultures, and other tests, but the results were consistently
normal. *See Duckworth v. Ahmad*, 532 F.3d 675, 681–82 (7th
Cir. 2008) (concluding that doctor was not subjectively indif-
ferent to risk of cancer when inmate showed no evidence
doctor thought cancer was possible, doctor performed ad-
vanced testing, and inmate had no symptoms indicative of
cancer). The decision whether further diagnostic testing—
like a colonoscopy—was necessary is "a classic example of a
matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97,
107 (1976); *see Harper v. Santos*, 847 F.3d 923, 928 (7th
Cir. 2017). That the colonoscopy, once administered, showed
a healthy colon reinforces our conclusion that Proctor's disa-
greement with the course of treatment does not give rise to a
constitutional claim. *See Johnson v. Doughty*, 433 F.3d 1001,
1013 (7th Cir. 2006); *see also McGowan v. Hulick*, 612 F.3d 636,
640 (7th Cir. 2010) (explaining that treatment delays which

*exacerbate* serious medical condition may constitute deliberate indifference).

Less efficacious treatment—chosen without the exercise of professional judgment—can constitute deliberate indifference, *see Petties*, 836 F.3d at 730, but Proctor failed to present evidence that his treatment departed from accepted medical judgment, practice, or standards. *See Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014); *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). In fact, Proctor's medical literature was *consistent* with the doctors' attestations that IBS is diagnosed by excluding other causes and that test results are usually normal. Proctor was treated with antispasmodic drugs, antibiotics, a stool softener, fiber, and medications to relieve his cramping, all of which were adjusted in response to his complaints. *See Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (noting that refusal to alter course of treatment despite worsening condition may establish deliberate indifference). No reasonable juror could conclude that the defendants' actions were "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that [they] … did not base the decision[s] on such a judgment." *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)).

As for the state defendants, Proctor argues that they were not entitled to summary judgment because they failed to address his complaints of daily pain. Because no reasonable jury could find that the Wexford defendants violated Proctor's constitutional rights, the state defendants cannot be liable for relying on the medical providers' exercise of judgment. *See Johnson*, 433 F.3d at 1010 (holding that grievance

counselor did not act with deliberate indifference when he ensured medical staff were monitoring and addressing situation and deferred to medical professionals' opinion); *see also Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008).

Proctor finally contends that the district court should not have denied his requests for counsel. But Proctor has given us no reason to conclude that recruited counsel would have affected this case's outcome. *See Tidwell v. Hicks*, 791 F.3d 704, 709 (7th Cir. 2015).

Accordingly, the judgment of the district court is AFFIRMED.