NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 11, 2018[*]
Decided May 11, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 17-1660

| | |
|---|---|
| MARSHAUN LAWS, <br>     *Plaintiff-Appellant,* <br><br> *v.* <br><br> WEXFORD HEALTH SOURCES INC., et al.,    *Defendants-Appellees.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 15 CV 1671 <br><br> Manish S. Shah, <br> *Judge.* |

**O R D E R**

Marshaun Laws, an inmate at Stateville Correctional Center, suffers from back pain. As relevant on appeal, he sued Stateville's health-services contractor (Wexford Health Sources, Inc.) and Dr. Saleh Obaisi (the prison's medical director and a Wexford employee). Laws accuses them of violating the Eighth Amendment by waiting too long to get magnetic resonance imaging (an MRI) and a specialist for his back. The district

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

court entered summary judgment for the defendants. Because the defendants exercised reasonable professional judgment in timing this treatment, we affirm.

Laws received attention from Stateville for his back pain soon after he arrived there in 2013. A physician assistant evaluated him in January and determined that his back had a full range of motion with no signs of trauma or deformity. Medical staff advised Laws to apply heat to his back to ease his episodic pain. A radiologist and Dr. Obaisi both reviewed X-rays of his back and saw no physical injury. Based on the X-ray results, the episodic nature of the pain, and Laws's otherwise good health, Dr. Obaisi believed that Laws had a muscle strain that was best treated as pain arose; he thought that an MRI was not warranted at that time.

Dr. Obaisi personally examined Laws in November 2013. By then, members of the medical staff had seen Laws several times, had prescribed pain relievers, and had instructed him to apply an analgesic balm to his back and to exercise his core. During Dr. Obaisi's evaluation, Laws bent over, flexed his legs normally, and displayed healthy reflexes. Following the assessment, Dr. Obaisi recommended that Laws take Motrin to manage his pain. Dr. Obaisi next saw Laws in February 2014, at which time Laws said that his back pain was gone. At a follow-up appointment in May, Laws reported that his back pain was now "on and off." Based on this development, Dr. Obaisi decided that Laws suffered from chronic back pain. He advised Laws to use a back brace and to apply ice to his back twice per day. Laws continued to see other medical staff for his pain periodically throughout the fall.

Laws wanted an MRI and an outside specialist to examine his back, so in 2015 he sued Dr. Obaisi and Wexford under the Eighth Amendment. He asserted that Dr. Obaisi should have already ordered an MRI and a specialist to examine his back, and that Wexford had a policy to contain costs by avoiding MRIs and consultants for back pain. Within three months of filing the suit, Dr. Obaisi requested an MRI for Laws, and Wexford approved the request.

Laws had his MRI exam in August 2015. Dr. Obaisi reviewed the results in October, after Laws signed the requisite release form. Dr. Obaisi saw no nerve damage, so he tested Laws to see if arthritis or lupus was causing his pain. Those tests were negative, too. The following week Dr. Obaisi and others ordered that Laws receive a consulting evaluation by an off-site orthopedic surgeon. The following month, before that evaluation took place, Laws told Dr. Obaisi that Motrin no longer provided sufficient relief. As a result, Dr. Obaisi suspected that Laws suffered from diffuse osteoarthritis, and so he prescribed a nonsteroidal anti-inflammatory drug and a muscle

relaxant for the pain. A consulting specialist reviewed the MRI results and examined Laws a few months later. The specialist suggested that Laws try a stronger nonsteroidal anti-inflammatory drug and begin physical therapy. Dr. Obaisi entered an order for physical therapy that day.

Based on this record, the district judge granted the defendants' motion for summary judgment. The judge concluded that a reasonable jury could not find that Dr. Obaisi or Wexford was deliberately indifferent to Laws's pain.

We review the grant of summary judgement de novo and evaluate the record in the light most favorable to Laws. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017). A health care provider violates the Eighth Amendment if it is deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To survive summary judgment, Laws must present evidence suggesting that he suffered from an objectively serious medical condition and that the defendants knew about the condition but disregarded it. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837, (1994); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). The parties do not dispute that Laws's back pain is an objectively serious medical condition. So we focus on whether a reasonable jury could find that the defendants knew of Laws's back pain but did not properly treat it. *Pyles*, 771 F.3d at 411.

The uncontested record does not permit a conclusion that Dr. Obaisi recklessly ignored Laws's back pain. He reviewed the X-rays of Laws's back in 2013 and, like the radiologist, concurred that Laws's spine was intact. Later he examined Laws and saw that Laws showed normal movement and flexibility. He prescribed Motrin for Laws's episodic pain, and Laws reported in early 2014 that his pain had resolved. When Laws complained of renewed pain a few months later, Dr. Obaisi prescribed a brace, heat, ice, core-strengthening exercises, pain medication, and analgesic balm. When the pain continued, Dr. Obaisi ordered the MRI, and after he reviewed the results, ordered further diagnostic tests. When the tests returned negative and Laws said that Motrin was no longer providing relief, Dr. Obaisi prescribed other anti-inflammatory drugs and muscle relaxants and ordered that Laws see a specialist. At the specialist's recommendation, Dr. Obaisi ordered that Laws begin physical therapy.

This treatment was consistent with standard practice for treating back pain. *See Proctor v. Sood*, 863 F.3d 563, 568 (7th Cir. 2017). Laws attached to his complaint medical articles reporting that back pain is often effectively treated with conservative efforts like hot or cold compresses, exercises, and pain medication. *See id.* That is precisely the course of treatment that Laws received until Dr. Obaisi learned that it was

no longer effective. At that point, he altered the treatment to include an MRI, stronger nonsteroidal anti-inflammatory drugs, an outside evaluation, and physical therapy.

Laws insists that a jury could find Dr. Obaisi liable under the Eighth Amendment for not ordering the MRI sooner, but we disagree with him. "[T]he question whether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. As we have observed, no evidence suggests that the treatment that Dr. Obaisi's provided in the year before he ordered the MRI (brace, heat, ice, core exercises, and pain relievers) fell outside the scope of ordinary professional judgment. *Pyles*, 771 F.3d at 411. Laws replies that he supplied such evidence: Dr. Obaisi ordered the MRI only after Laws sued him. But the pendency of the lawsuit is at most evidence that Laws disagreed with his doctor's medical judgment, and that disagreement alone does not show deliberate indifference to his needs. *See id.* at 409. Besides, evidence of "subsequent remedial measures"—the MRI exam—is not admissible to prove prior culpability. *See* FED. R. EVID. 407.

Laws also unpersuasively argues that Dr. Obaisi was deliberately indifferent by waiting for over a year to consult a specialist. A jury may infer deliberate indifference when a healthcare provider refuses to seek a specialist if the need for one "either was known by the treating physicians or would have been obvious to a lay person." *Pyles*, 771 F.3d at 412. The need for a specialist was not apparent until conventional treatment failed and diagnostic tests ruled out what Dr. Obaisi thought could be sources of Law's pain. Once that happened, Dr. Obaisi requested a specialist. It is true that the specialist did not see Laws until several months later. But the record does not suggest that Dr. Obaisi was responsible for that delay. *See Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001). Based on the history of treatment that Dr. Obaisi provided, a jury could not conclude that he was deliberately indifferent to Laws. *See id.*

Finally, a jury could not find that Wexford was deliberately indifferent. Laws contends that Wexford has an unconstitutional cost-saving policy of delaying MRIs and avoiding outside specialists. But because Dr. Obaisi exercised his judgment acceptably in deciding when to order an MRI and seek a specialist, Wexford is not liable for any delays. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Accordingly, the judgment of the district court is AFFIRMED.