**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 26, 2021*
Decided July 27, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-3531

| | |
|---|---|
| CHARLES SHEPPARD, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 19-CV-1401 |
| JULIE LUDWIG, et al., *Defendants-Appellees.* | Nancy Joseph, *Magistrate Judge*. |

**O R D E R**

Charles Sheppard, an obese Wisconsin inmate, fell out of a chair in his cell, hit his head on his bunk, and was sent to the hospital—where he was diagnosed with a concussion. The next day, he was directed by a nurse to walk up a hill to the health-services unit to pick up his medications. Feeling light-headed, he expressed concerns about making the walk but was told to use a bench-seated walker. He proceeded with the walker but got dizzy, fell down the hill, and banged his head on the concrete. Sheppard sued prison and medical staff under 42 U.S.C. § 1983 for deliberate

---

* We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

indifference to his serious medical needs. The district court found no constitutional violation and entered summary judgment for the defendants. But because a fact question remains over whether the nurse acted willfully by forcing Sheppard to walk to health services in his condition, we reverse on that issue. Otherwise, we affirm.

Sheppard weighs 400 pounds. Shortly after his transfer to Fox Lake Correctional Institution, he told guards that the plastic chair in his cell could not hold his weight because a similar chair had collapsed under him at his prior facility. That facility had provided him with a sturdier chair, and he filed a complaint asking officials at Fox Lake to do the same. In response, an inmate-complaint examiner told Sheppard that his requests for accommodations (including the sturdier chair and permission to use a wheelchair for long distances) would be reviewed in a couple weeks by a special-needs committee made up of prison officials and medical staff. The examiner also spoke to an officer from the sanitation department who told her that the plastic chair could hold up to 700 pounds. (According to the chair's specifications, it holds up to 1,500 pounds.)

Before the committee met, however, Sheppard fell out of the plastic chair in his cell and hit his head. Prison staff gave him ice and told him they would check on him later. But he soon became dizzy and vomited, so a nurse ordered that he be sent to a hospital. At the hospital, he was diagnosed with a concussion and treated. Several hours later, the hospital discharged him with instructions to seek medical attention immediately if he experienced confusion, dizziness, or trouble walking—symptoms that could be signs of a more serious injury. Upon his return to the prison, Sheppard saw nurse Jan Britt, who gave him information about treating concussions.

That same day, the committee met to discuss Sheppard's requested accommodations. Although the plastic chair was designed to hold a weight well above Sheppard's, the committee approved his request for a sturdier chair and ordered that he be provided with a steel or metal one. The committee discontinued his prior facility's accommodation allowing him to use a wheelchair for long distances; in the committee's view, Sheppard—given his weight and general complaints of pain—stood to benefit from increased movement. As an alternative, the committee offered Sheppard a walker equipped with a bench that he could sit on if he needed a break from walking.

The next day—less than 48 hours after suffering the concussion from the fall in his cell—Sheppard fell and hit his head again. The parties disagree about what happened, but we construe the facts in the light most favorable to Sheppard, the nonmovant. *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020). When the time

came to take his evening medications, Sheppard told an officer that he was unable to walk to the health-services unit to get them. The officer contacted Britt and let Sheppard speak with her. Sheppard told Britt that he could not walk up the hill because he felt "extremely loopy, dizzy, and disoriented." Reminding her that he had just been released from the hospital with a concussion, he asked that he be allowed to use a wheelchair or that someone bring the medications to him. According to Sheppard, Britt told him that he could use his walker and that she would write him a conduct report if he did not walk to health services. (Britt denies talking to Sheppard and insists that she spoke only to the officer.) Not wanting to get in trouble, Sheppard tried to proceed uphill to health services with his walker, but he became dizzy, fell down the hill, and "smacked" his head on the concrete.

Sheppard sued prison and medical staff, including Britt, for violating his Eighth Amendment rights by (1) making him use a plastic chair unsuitable for his weight, (2) discontinuing his wheelchair restriction right after he suffered a concussion, and (3) forcing him to walk to health services even though he was dizzy and disoriented.

The magistrate judge, presiding with the parties' consent, granted the defendants' motion for summary judgment. First, she concluded that the defendants' refusal to provide Sheppard a suitable chair for only a short period of time—the two weeks until the special-needs committee could consider his request—did not deprive him of the minimal civilized measures of life's necessities. As for the post-concussion discontinuation of Sheppard's wheelchair restriction, she determined that this claim was nothing more than a disagreement with the committee's chosen course of treatment and, regardless, nothing in Sheppard's hospital-discharge papers suggested that he needed a wheelchair. Finally, regarding Britt's directive that Sheppard walk to health services, the judge opined that no jury could conclude that she acted with deliberate indifference because his symptoms of confusion, dizziness, and disorientation were not an objectively serious medical condition. The judge also alluded to Britt's knowledge that Sheppard could use a walker for support and to his discharge papers, which did not mention any walking limitations or need for a wheelchair.

Sheppard moved under Rule 59 of the Federal Rules of Civil Procedure to vacate the judgment on grounds that the judge downplayed the seriousness of his concussion. The judge denied the motion, reiterating that even if his condition were sufficiently serious, Britt could not have acted with deliberate indifference based on the limited content of the discharge papers and the availability of a walker that was an "adequate (if not perfect) protection" against any risk of harm from his concussion symptoms.

On appeal, Sheppard argues that summary judgment was inappropriate because issues of material fact remained on each of his claims. First, regarding his need for a sturdier chair, he asks whether defendants knew of—and purposefully disregarded—the risk to him if he continued to use a plastic chair like the one that collapsed under him at his former facility. But Sheppard has not put forward evidence from which a jury could infer that his use of the chair in the short-term—the two weeks leading up to the committee's response to his request for something sturdier—posed an excessive risk to his safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The undisputed evidence shows that defendants in the meantime investigated his complaint, learned that the chair in his cell was designed to hold over 400 pounds, and thus had little reason to suspect that he was at risk if he continued to use the chair.

Next, with regard to the committee's denial of his request to use a wheelchair, Sheppard argues that the judge ignored key evidence—specifically, the medical order from his prior facility allowing him to use a wheelchair for long distances. But no reasonable jury could conclude that the defendants' decision to discontinue this accommodation was "so plainly inappropriate" to suggest that they intentionally or recklessly disregarded Sheppard's needs. *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (internal citation omitted). The evidence reflects that the committee reached a reasoned conclusion that a bench-seated walker would benefit him more than a wheelchair because it could facilitate movement and provide him something to sit on as needed. Sheppard failed to present evidence that the chosen course of action was so unreasonable that it represents an abandonment of medical judgment. *See Proctor v. Sood*, 863 F.3d 563, 568 (7th Cir. 2017). As for his assertion that the committee should have allowed him a wheelchair because of his concussion, the hospital discharge instructions did not specify any need for such an accommodation.

Lastly, Sheppard contends that the judge did not construe the facts in his favor when she concluded that no jury could find that Britt was deliberately indifferent to his risk of harm. He maintains that his medical condition was serious and that Britt recklessly forced him to walk to health services soon after a concussion, feeling "extremely loopy, dizzy, and disoriented."

We agree with Sheppard that the judge erred by concluding that a concussion, accompanied by dizziness and confusion, was not an objectively serious medical condition. "Any injury to the head unless obviously superficial should ordinarily be considered serious." *Murphy v. Walker*, 51 F.3d 714, 719 (7th Cir. 1995).

Moreover, had the judge construed the record in Sheppard's favor, *see Machicote*, 969 F.3d at 827, a more troubling picture would emerge. In Sheppard's telling, he was still experiencing the after-effects of his concussion, feeling dizzy and disoriented, when Britt threatened him with a conduct report if he did not walk up the hill to retrieve his medications. Even though Britt encouraged him to use a walker, his hospital discharge papers specified that the symptoms he recounted to her—confusion and trouble walking—required immediate medical attention. Despite trying to proceed, he grew dizzy, fell, and smacked his head on the concrete ground. Based on this version of events, a reasonable jury could conclude that Britt was deliberately indifferent toward Sheppard's serious medical needs. *See Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689–91 (7th Cir. 2013) (fact question precluded summary judgment on deliberate-indifference claim where nurse told prisoner with back pain that he could climb a ladderless bunk bed even though he said he could not and then fell while trying); *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (fact question precluded summary judgment on deliberate-indifference claim where nurse both withheld medication and threatened to lock up prisoner if he continued to complain).

Because a fact question remains over Sheppard's deliberate-indifference claim against Britt for making him walk to health services in his disoriented, post-concussion state, we REVERSE the judgment on that claim and REMAND for further proceedings. Otherwise, we AFFIRM.